**Betty H. PORTER, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–296.

United States Court of Veterans Appeals.

June 16, 1993.

Walter J. Olin, Jr., Lexington, KY, on the brief, for appellant.

James A. Endicott, Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Angela Foehl, Washington, DC, were on the pleadings, for appellee.

Before FARLEY, HOLDAWAY and IVERS, Associate Judges.

IVERS, Associate Judge:

Betty H. Porter appeals a November 7, 1991, decision of the Board of Veterans' Appeals (BVA or Board) finding no clear and unmistakable error in an April 1974 rating decision. *Betty H. Porter*, BVA 91–36384 (Nov. 7, 1991). The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance. The Court has jurisdiction of the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991). For the reasons set forth below, we affirm the November 7, 1991, decision of the BVA.

## FACTUAL BACKGROUND

Veteran John M. Porter served in the United States Air Force from July 22, 1943, to March 15, 1946. R. at 21. On March 30, 1946, following appellant's application to a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO), the RO granted service connection for soft systolic mitral murmur (rated as 0% disabling). *Ibid.* On August 9, 1966, the RO denied an increased evaluation for his service-connected systolic mitral murmur and denied service connection for arteriosclerotic heart disease with angina pectoris. R. at 37.

The veteran died on April 28, 1973. R. at 40. The death verification certificate stated that the immediate cause of his death was congestive heart failure "due to, or as a consequence of" arteriosclerotic heart disease. *Ibid.* On April 15, 1974, his widow, appellant in this appeal, filed an appli-

cation for dependency and indemnity compensation (DIC). R. at 41; *see* R. at 45. On April 29, 1974, the RO denied service connection for the veteran's death (R. at 46) and sent notice to appellant on May 8, 1974 (R. at 66). Because appellant did not appeal within one year from the date of mailing of the notice, the RO's decision became final. *See* 38 U.S.C.A. § 7105(b)(1) (West 1991).

On March 10, 1989, appellant sought to reopen the claim for DIC benefits (R. at 58) and submitted letters from physicians, a personal statement, a newspaper article, and duplicate records (R. at 47–57). On January 29, 1990, based on appellant's new evidence, the RO found that the veteran's service-connected systolic mitral murmur was a contributory cause of death and granted service connection for the veteran's death, with DIC benefits effective April 1, 1989. R. at 61. On September 27, 1990, appellant filed a Notice of Disagreement, seeking an earlier effective date, retroactive to her original claim in 1974, for the DIC benefits. R. at 62. Following a personal hearing, a hearing officer wrote that an effective date earlier than April 1, 1989, was not warranted because the April 1974 rating decision was not "clearly erroneous." R. at 76. On March 6, 1991, appellant filed a substantive appeal to the BVA, stating that "there are obvious errors of fact in the [hearing officer's] decision." R. at 77. In August 1991, appellant's service representative sent a "Statement of Accredited Representation in Appealed Case," stating that "the decision of [April 1974] could have been erroneous" and that "it is extremely likely that there was an erroneous decision made when [appellant] filed for benefits." R. at 83. On November 7, 1991, the BVA found that there had been no clear and unmistakable error in the April 1974 RO rating decision and denied an earlier effective date. *Porter*, BVA 91–36384, at 7.

### ANALYSIS

■ As a threshold matter, the Secretary argues that this was a reopened claim and that the Board should not have reached, sua sponte, the issue of whether this was a case of clear and unmistakable error, but that the Board's determination on that issue was harmless error. Secretary's Motion at 7. However, once a claimant has submitted a well-grounded claim, the Board has a duty to assist that claimant, a duty which involves, in part, determining what issues have been raised. *See Myers v. Derwinski*, 1 Vet.App. 127, 130 (1991) ("BVA must review all issues which are reasonably raised from a liberal reading of the appellant's substantive appeal"); *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991) (VA's duty to assist involves considering issues raised in all documents or testimony submitted before a BVA decision). The Board thus properly reached the issue of whether the prior rating decision was based on clear and unmistakable error.

■ The issue before this Court, then, is limited to whether the BVA's November 1991 decision that there was no clear and unmistakable error in the April 1974 RO rating decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C.A. § 7261(a)(3)(A) (West 1991); *see Villalobos v. Principi*, 3 Vet.App. 450, 452 (1992); *Archer v. Principi*, 3 Vet.App. 433, 437 (1992) (Court cannot conduct "plenary review of the merits of the original decision"); *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (consolidated with *Collins v. Principi*, No. 90–416) (en banc) (Court review of a decision "that has considered possible 'clear and unmistakable error' in previous adjudications over which [it] does not have jurisdiction is necessarily limited" to the standard of review enunciated above).

■ Under 38 C.F.R. § 3.105(a) (1992), "Previous determinations which are final and binding . . . will be accepted as correct in the absence of clear and unmistakable error." "Clear and unmistakable" errors are "undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed *at the time it was made.*" *Russell*, 3 Vet.App. at 313–14 (emphasis added). Where evidence establishes such error, the

prior decision will be reversed or amended. *Id.* at 314. "A determination that there was a 'clear and unmistakable error' *must be based on the record and the law that existed at the time of the prior [agency of original jurisdiction (AOJ) ] or BVA decision.*" *Russell,* 3 Vet.App. at 314 (emphasis added). Therefore, evidence that was not of record at the time of a prior AOJ or BVA decision cannot be the basis of a finding that the AOJ or BVA committed clear and unmistakable error.

In its November 1991 decision, upon reviewing appellant's evidence in support of her resubmitted claim, the Board stated:

There existed no basis, in view of the ... evidentiary record, to allow the [AOJ] to conclude that the veteran had died of a disorder related to his period of active service. It is our judgment that the April 29, 1974, rating decision by the [AOJ] constituted a reasonable exercise of rating judgment based upon the evidence then of record.

*Porter,* BVA 91–36384, at 5. The Board further stated:

It was not until receipt of the fall 1989 opinions of the private doctors that the RO could conclude from the record that the veteran died of a disability related to his period of active service. Such a conclusion could not reasonably have been reached on the basis of the medical evidence which was of record before the RO when they promulgated their April 29, 1974, rating decision which denied entitlement to service connection for the cause of the veteran's death.

*Id.* at 6–7.

At the time of the RO's rating decision in April 1974, the veteran's service medical records (R. at 1–19), 1966 treatment records (R. at 22), 1966 VA examination records (R. at 23–35), the April 1973 death verification certificate signed by Dr. Max Jones, a private physician (R. at 40), and a July 1973 letter from Dr. Jones (R. at 38) were of record. After April 1974, in connection with her claim for an earlier effective date, appellant generated evidence that included a copy of the death verification certificate (R. at 48), a newspaper article (R. at 50), an August 1989 statement by Dr. Jones (R. at 51), a September 1989 letter from a private physician, Dr. James Adams (R. at 53), a September 1989 letter from a treating physician, Dr. Ballard Wright (R. at 55–56), her own statement from September 1989 (R. at 57), and testimony at a January 1991 personal hearing (R. at 70–74).

Dr. Adams' September 1989 letter was not and could not have been of record at the time of the RO's April 1974 rating decision. Dr. Adams' statement that the veteran's "medical problem most certainly developed during his tenure in the military, thus entitling his widow to his disability benefits" was based on a review *in 1989* of the veteran's medical records and death certificate. R. at 53.

Dr. Wright's September 14, 1989, letter was not of record either at the time of the RO's April 1974 rating decision. As Dr. Wright indicated, one of the bases for his 1989 letter was information regarding the veteran's in-service episode of rheumatic heart disease that he had received at some point *after* he stopped treating him. R. at 55.

Nor was Dr. Jones' August 3, 1989, letter of record at the time of the April 1974 RO rating decision. In his August 1989 letter, Dr. Jones opined that the veteran "died of [intractable] heart failure secondary to aortic stenosis [on] the basis of a bicuspid aortic valve." R. at 51. However, in the same letter, Dr. Jones stated that his "present opinion" had not been formed until 1975 or 1976, that is, *after* the rating decision. *Ibid.* Dr. Jones also stated: "At the time of [the veteran's] death the belief was still common that rheumatic fever could produce isolated aortic valve lesions. This was *later* proved false...." *Ibid.* (emphasis added). This statement indicates that the state of medical knowledge had changed after the veteran's death.

■ Appellant argues that the VA breached its duty to assist appellant by not seeking in 1974 the statements made in 1989 by Dr. Jones, Dr. Adams, and Dr. Wright. Br. at 7. While VA has no duty to seek to obtain records of which it has no notice, the question remains open as to whether an alleged failure to fulfill the "duty to assist" in a prior adjudication can

ever be the basis for a determination of "clear and unmistakable error" as to that adjudication. *Cf. Ivey v. Derwinski,* 2 Vet. App. 320, 323 (1992) (VA was on notice of private medical records and thus obligated to seek to obtain those records); *Schafrath v. Derwinski,* 1 Vet.App. 589, 593 (1991) (VA has duty to search for VA records *sought* by claimant); *Murincsak v. Derwinski,* 2 Vet.App. 363, 372 (1992) (when VA is put on notice before issuance of final decision of the possible existence of certain records and their relevance, BVA must seek to obtain those records). VA could not possibly have had notice of *1989* records in *1974.* Moreover, in their letters, the physicians all indicated that their opinions were formed *after* the April 1974 RO rating decision. Therefore, VA had no duty to seek to obtain that which did not exist.

Recently, we held that a BVA decision that did not find clear and unmistakable error in an original adjudication was not arbitrary, capricious, or an abuse of discretion "[g]iven the state of medicine extant" at the time of the original adjudication. *Kronberg v. Brown,* 4 Vet.App. 399, 401 (1993). As we stated in *Russell,* "New or recently developed facts or changes in the law subsequent to the original adjudication may provide grounds for reopening a case or for a de novo review but they do not provide a basis for revising a finally decided case." *Id.* at 313. Similarly, here, the state of medical knowledge in general and the medical opinions specifically concerning the veteran's cause of death changed after the original adjudication. However, those changes cannot be a basis for revising the April 1974 rating decision. Accordingly, we hold that the Board's November 1991 decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

### CONCLUSION

For the reasons stated above, we AFFIRM the BVA's November 7, 1991, decision.