**Albert R. OLSON, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–542.**

United States Court of Veterans Appeals.

Aug. 23, 1993.

been submitted to reopen his claim for a total evaluation (100%) based on individual unemployability, retroactive to July 1981. The Secretary of Veterans Affairs filed a motion for remand for the Board to consider whether appellant is currently entitled to a total evaluation based on individual unemployability. Appellant opposes this motion and contends that the decision which terminated his individual unemployability benefits contained clear and unmistakable error (CUE). We agree and are compelled to reverse the November 1990 BVA decision, as to this issue, and remand the matter for the Board to reinstate appellant's former total rating based on individual unemployability (IU), with an effective date of July 2, 1981. We affirm that part of the decision which denied an increased rating for schizophrenia.

## I. BACKGROUND FACTS

Appellant served on active duty from August 1942 to November 1945. In July 1961, the Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) awarded appellant a 100% schedular rating for schizophrenia. This was reduced to 70% in July 1962.

On November 21, 1966, the Vocational Rehabilitation Board (VRB) determined vocational rehabilitation to be indefinitely medically infeasible for appellant. This determination was based on a report from a counseling psychologist, Dr. Peterson, who observed appellant from 1962 to 1966 at the VA Mental Hygiene Clinic and Day Center. On December 8, 1966, the RO awarded appellant a total rating based on IU, effective from August 6, 1966.

From February 9, 1979, to March 2, 1979, appellant was hospitalized for schizophrenia, schizo-affective type, manifested by depression. A rating decision continued his 70% rating for schizophrenia. On November 28, 1980, the VA conducted a medical examination of appellant, which included a social and industrial interview, and a psychiatric evaluation. Dr. Whitacre found that appellant's diagnosis of schizophrenia had remained essentially unchanged over a number of years; that he had been "a

George Estry (non-attorney representative) was on the pleadings, for appellant.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Joan E. Moriarty were on the pleadings, Washington, DC, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and IVERS, Judges.

MANKIN, Judge:

Albert R. Olson appeals the November 27, 1990, Board of Veterans' Appeals (BVA or Board) decision which denied entitlement to an increased evaluation for undifferentiated schizophrenic reaction, currently evaluated as 70% disabling, and determined that new and material evidence had not

psychotic individual for a long time." On April 6, 1981, the RO issued a decision terminating appellant's IU benefits because it found that his disorder did not prevent all forms of gainful employment.

On July 8, 1982, the BVA affirmed the RO decision. The veteran disagreed with the BVA decision and alleged, inter alia, that the decision contained CUE because the Board failed to consider a VA VRB report. The Board construed Mr. Olson's claim to be a motion for reconsideration and denied it.

In March 1989, appellant sought to reopen his claim for an increased rating. This was denied by a March 30, 1989, rating decision. He filed a Notice of Disagreement and added a claim for IU benefits. He also submitted a Substantive Appeal (VA Form 1–9) in which he contended that the VA's failure to apply 38 C.F.R. § 3.343(c) in the prior decision which terminated his benefits was clear and unmistakable error. Appellant presented a report of a medical examination from October 6, 1989, which revealed that he suffered recurring bad dreams, had a feeling he was being spied on, and believed his mind was controlled by an evil force. Other medical records show appellant to be oriented, alert and cooperative, but socially withdrawn.

The November 14, 1989, rating decision continued the 70% rating, denied retroactive IU benefits and denied a current IU rating. The BVA, in a November 27, 1990, decision found that new and material evidence has not been presented to establish IU retroactive to July 1981, and denied an increased rating for schizophrenia, currently rated as 70% disabling. *Albert R. Olson,* BVA 90–40288, at 7 (Nov. 27, 1990).

## II. ANALYSIS

### A. Schedular Rating for Schizophrenia

■ The Court must affirm factual findings of the BVA unless they are found to be "clearly erroneous." 38 U.S.C.A. § 7261(a)(4) (West 1991); *see Lovelace v. Derwinski,* 1 Vet.App. 73 (1990); *Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990). In determining whether a finding is clearly

erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert,* 1 Vet. App. at 53.

The rating criteria for schizophrenia, undifferentiated type, appears at 38 C.F.R. § 4.132, Diagnostic Code (DC) 9204 (1992). A 100% schedular rating will be awarded where there are "[a]ctive psychotic manifestations of such extent, severity, depth, persistence or bizarreness as to produce total social and industrial adaptability." A 70% rating is appropriate for a veteran "[w]ith lesser symptomatology such as to produce severe impairment of social and industrial adaptability."

In denying an increased rating for schizophrenia, the BVA relied upon a recent VA examination which revealed that Mr. Olson was oriented, alert, and cooperative. The examination report indicated that appellant's affect was found to be slightly inappropriate, that his speech was normal in mechanics and content, but that associations were somewhat sparse and tended to be a little circumstantial. He had a history of paranoid thinking, and complaints of ideas of reference were noted, but there was no evidence of active psychotic manifestations. Based on the evidence in the record, the Court holds that a plausible basis exists for the BVA determination on this issue.

### B. Clear and Unmistakable Error

In his Substantive Appeal, appellant alleged that the July 1982 BVA decision contained CUE because it improperly terminated appellant's IU benefits when it failed to consider 38 C.F.R. § 3.343(c). He contended that his benefits should be reinstated as of July 1981, the effective date of the termination. The RO was the actual body to terminate appellant's IU benefits with this effective date. The Board, in its July 1982 decision, determined that appellant was not entitled to IU, thus affirming the RO decision below it. Pursuant to 38 C.F.R. § 20.-1104 (1992),

When a determination of the agency of original jurisdiction [an RO] is affirmed by the [BVA], such determination is subsumed by the final appellate decision. As a result, the RO decision became part and parcel of the final July 1982 BVA decision.

In the BVA decision on appeal, the Board acknowledged Mr. Olson's claim, stating:

The veteran and his representative apparently contend that the veteran should be entitled to a total evaluation based on individual unemployability due to his service-connected schizophrenia retroactive to July 1981 because the decisions which resulted in this reduction did not consider his vocational rehabilitation file, or consider or cite the provisions of 38 C.F.R. [§§] 3.327 and 3.343. They maintain that his claim for a total evaluation was prejudiced by the failure to consider that evidence and those regulations.

*Olson*, BVA 90–40288, at 2. In its evaluation of appellant's claim, however, the Board incorrectly phrased the issue as "whether the additional evidence associated with the claims file subsequent to the Board's 1982 decision creates a new factual basis warranting a favorable determination." *Olson*, BVA 90–40288, at 5. The BVA further stated that

[w]hile the veteran feels that his earlier claim was prejudice [sic] by the failure to consider his vocational rehabilitation file or the provisions of 38 C.F.R. [§§] 3.327 and 3.343 at the time of the July 1982 decision of the Board, this contention does not provide, or suggest, a new factual basis warranting a total evaluation retroactive to July 1981.

*Id.* Although the Board mischaracterized Mr. Olson's claim as a reopened one, it essentially adjudicated the actual claim made by appellant—a claim of CUE in the prior July 1982 BVA decision.

■ Pursuant to 38 C.F.R. § 3.105(e) (1992), "Previous determinations which are final and binding ... will be accepted as correct in the absence of clear and unmistakable error." A CUE is "undebatable, so that it can be said that reasonable minds

could only conclude that the original decision was fatally flawed at the time it was made." *Russell v. Principi*, 3 Vet.App. 310, 313–14 (1992) (en banc); *Porter v. Brown*, 5 Vet.App. 233, 235 (1993). Where evidence establishes such error, the prior decision must be revised. *Russell*, 3 Vet. App. at 314.

■ In order for there to be a valid CUE claim, there must have been an error in the prior adjudication of the claim. *Porter*, 5 Vet.App. at 235; *Archer v. Principi*, 3 Vet.App. 433, 437 (1992); *Russell*, 3 Vet.App. at 313. Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied. *Moray v. Brown*, 5 Vet.App. 211, 212 (1993); *Russell*, 3 Vet. App. at 313. In this case, Mr. Olson's valid CUE claim centers around the failure to apply regulations extant at the time of the July 1982 BVA decision. Although he also raised the issue of CUE regarding the BVA's failure to consider his vocational rehabilitation file, we note that he previously raised this claim before the BVA in 1982 in his motion for reconsideration. A claim for CUE cannot be endlessly reviewed. Once there is a final decision *on a particular claim* of CUE, *that particular claim* of CUE may not be raised again; it is res judicata. *Schmidt v. Brown*, 5 Vet.App. 27, 29 (1993); *Russell*, 3 Vet.App. at 315. Therefore, we restrict our review to the CUE claim involving the failure to apply the regulations extant at the time of the decision terminating IU benefits.

The Court cannot directly review the July 1982 BVA decision; our authority reaches only to review of the November 1990 BVA decision on appeal. Thus, we are limited to deciding whether the November 1990 BVA decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Russell*, 3 Vet.App. at 315; *see* 38 U.S.C.A. § 7261(a)(3)(A) (West 1991).

It is clear that the requirements for *decrease* of a rating for disabilities which have continued for a long time at the same level are more stringent than those for an

initial award or an increase in ratings. *Collier v. Derwinski*, 2 Vet.App. 247, 249 (1992); 38 C.F.R. §§ 3.343, 3.344 (1992). *See Tucker v. Derwinski*, 2 Vet.App. 201, 203–04 (1992). The standard for reduction when a 100% rating is based on individual unemployability is set out in 38 C.F.R. § 3.343(c) which states, in pertinent part:

> In reducing a rating of 100 percent service-connected disability based on individual unemployability, the provisions of [38 C.F.R.] § 3.105(e) are for application but caution must be exercised in such a determination that *actual employability is established by clear and convincing evidence.*

(Emphasis added.)

▬ The purpose of a standard of proof is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *In re Winship*, 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970). The standard "allocate[s] the risk of error between the litigants and [indicates] the relative importance attached to the ultimate decision." The "clear and convincing" standard of proof is an intermediate standard of proof between "preponderance of the evidence" and "beyond a reasonable doubt," *see Addington v. Texas*, 441 U.S. 418, 424, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979), and is used when the individual interests at stake are more substantial than those in a typical civil dispute. *See Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 281, 110 S.Ct. 2841, 2853, 111 L.Ed.2d 224 (1990).

A review of the record here reveals that the Board did not apply the "clear and convincing" standard. Section 3.343(c), title 38 of the Code of Federal Regulations, was in existence at the time of the 1982 BVA decision; accordingly, the VA was required to apply it. It is beyond question that the VA must follow its own regulations. *See Dofflemyer v. Derwinski*, 2 Vet.App. 277, 280–81 (1992); *Browder v. Derwinski*, 1 Vet.App. 204, 205 (1991); *Payne v. Derwinski*, 1 Vet.App. 85, 87 (1990). As shown below, if section 3.343(c)

had been considered, it would have manifestly changed the outcome of the decision because at the time of the termination of benefits actual employability had not been established by clear and convincing evidence in Mr. Olson's file.

The evidence upon which the RO necessarily relied at the time of its April 1981 decision consisted of a VA medical examination, a social and industrial interview, and a psychiatric evaluation, all of which were conducted on November 28, 1980. The social worker's interview indicated that the veteran

> *has held no jobs since [his] last rating....* He spends his days helping with household chores and maintenance, some cooking, listening to the radio and occasionally going to the Air Force PX for lunch. In the summer he spends time at his lake cabin near Brainerd. He reads and watches TV little because it hurts his eyes.

(Emphasis added.) The VA psychiatric evaluation also fails to reveal any evidence of employment. Dr. Whitacre found that once appellant, formerly an osteopath, had become psychotic, he had never recovered and worked again. He noted that Mr. Olson "works on the house and visits the neighbors and rides his bike and generally maintains a solitary life.... [H]e does a little yard work for his sister, [but] basically, he doesn't do much of anything else." The only reference to employability in the VA physical medical examination consisted of the physician's notation that the veteran "says he hasn't been able to work since [his] neck injury. He relates [his] neck problem to injury in service."

It is evident that the RO did not have clear and convincing evidence of employability with which to legally terminate Mr. Olson's benefits in April 1981. In fact, the RO's only statements relating to the termination are bare and conclusive: "[C]urrent psychiatric examination does not reveal symptomatology or manifestations of the veteran's psychosis which would prevent all forms of gainful employment. Accordingly, entitlement to individual unemployability benefits is not found and the benefit

is terminated." In the present case, there was *no* evidence of employability at the time of the 1981 RO decision; the RO *certainly* did not have "clear and convincing evidence" with which to terminate appellant's IU. Reasonable minds could *only* conclude that the original decision was fatally flawed because of the failure to consider applicable regulations. *See Russell*, 3 Vet.App. at 313–14. This is "the sort of error which, had it not been made, would have manifestly changed the outcome" of the decision. *Id.* at 313. Therefore, we hold that the BVA's determination that this decision did not contain clear and unmistakable error is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 38 U.S.C.A. § 7261(a)(3)(A).

### III. CONCLUSION

Accordingly, as to the issue of IU, we reverse the November 27, 1990, BVA decision and remand the matter for the Board to reinstate appellant's former total rating based on individual unemployability, with an effective date of July 2, 1981, the date that benefits were terminated. The BVA decision is affirmed as to the denial of an increased rating for schizophrenia.