**Oliver G. GRAVES, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–483.

United States Court of Veterans Appeals.

Feb. 10, 1994.

**168**

Oliver G. Graves, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Rudrendu Sinhamahapatra, Washington, DC, were on the pleadings, for appellee.

Before KRAMER, MANKIN and IVERS, Judges.

MANKIN, Judge, filed the opinion of the Court, in which IVERS, Judge, joined.

KRAMER, Judge, filed a dissenting opinion.

MANKIN, Judge:

Oliver G. Graves (appellant) appeals a January 3, 1992, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to restoration of service connection for the residuals of a herniated disc with right-side sciatica. The appellant claims the Board erred in determining that a 1986 grant of service connection was clearly and unmistakably erroneous. The Secretary asserts there was clear and unmistakable error (CUE) in

the grant because the true facts reflect that the appellant's injury was related to a post-service cause, and thus not compensable by virtue of service connection. While we do not agree that the Board's finding that there was clear and unmistakable error in the prior grant of service connection was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we do find that the Board breached its duty to assist the appellant. Consequently, the Court vacates the decision of the Board, and remands this case so that the Board may have the opportunity to fulfill its duty to assist.

## I. Factual Background

The appellant served in the United States Army from December 1962 to January 1970. His service entrance examination reflects that he had no back disabilities. On May 16, 1969, the appellant was treated for low back pain, L–5 spine, which occurred while he was shoveling dirt into ammunition boxes. The examiner noted that the appellant had no prior history of back problems. The appellant's discharge examination report also indicated back trouble, and the physician's summary noted back strain, no sequelae. A report from a 1986 special orthopedic examination stated that the appellant had several injuries to his lower back in service. In addition to the shoveling injury, he was apparently hospitalized for low back pain after a parachute jump and was diagnosed with a pinched nerve.

In another examination conducted on September 9, 1986, the examining physician noted that the appellant had been injured on his civilian job on two occasions. He incurred a back injury while lifting a large metal sheet from a rack in 1979, and in 1980 he was struck in the back by a 3000–pound pan on a crane. The diagnosis from the examination and x-ray of the lumbosacral spine was herniated disc with right sciatica, chronic and acute. A July 1980 referral form noted that the appellant's back was injured in 1979 while lifting a heavy object. The appellant had chronic episodic back pain throughout the ensuing seven years and continued to be seen for treatment of complaints of lower back pain. During that period there were occasions in which the appellant was unable

to work because of his disability. A hospital discharge summary from August 1986 indicated that, starting in February 1986, the appellant's pain had become increasingly worse and that he had had no resolution of pain since that time.

In October 1986, the appellant was granted service connection for a herniated disc with right sciatica, rated at 20%. In a report from December 1986, captioned "Chief Complaints and Duration (Use patient's own words)," the examiner noted the 1979 and 1980 industrial accidents, but did not mention the appellant's service injuries. In a letter dated September 18, 1987, the appellant's orthopedist wrote that the appellant had a ruptured disc at the L–5–S1 level, that he would not benefit from surgery, and that he was unable to return to any employment. Eventually, the appellant's rating was increased to 40%. This evaluation was confirmed by the BVA in a decision dated February 16, 1988. In a February 1988 letter to the appellant's employer, Lincoln Electric Company, Dr. Goodwin stated that the appellant had been receiving treatment for low back pain since his 1979 work-related accident and that he should be considered permanently and totally disabled.

In July 1988, the appellant was examined by a specialist at the State of Ohio Industrial Commission. The examiner reviewed the industrial records associated with the injuries sustained in the two industrial accidents and noted that "[t]he majority of his complaints are those related to his 1979 injury of his lower back. . . ." In December 1988, a rating board severed the appellant's service connection because it found "clear and unmistakable error" in the prior October 1986 rating decision granting service connection. The Regional Office (RO) based its decision on the fact that at the time of separation from service there were no physical findings or complaints of back pain. In addition, the appellant had submitted no medical evidence showing a history of low back treatment from the time of separation. The decision severing service connection was confirmed by a subsequent rating decision in May 1989. In addition, a grant of benefits for individual unemployability was denied. The appellant was informed of the decision on May 17, 1989, and given an opportunity to appear at a personal hearing; however, he did not report at the specified time and date.

On January 3, 1990, the appellant testified at a personal hearing that he had first injured his back at jump school at Fort Benning, Georgia, and again on a "swift strike" jump in North Carolina. The appellant stated that he did not report these injuries because he did not think they were serious. The appellant also stated that he had injured himself in service during a parachute jump in Germany, that he was hospitalized for three days as a result, and was diagnosed with a pinched nerve. The appellant also stated that he had had an employment physical examination in 1973, at which time he informed his employer, Lincoln Electric Company, that he had injured his back during military service.

The appellant further testified that after separation from service in 1970 he was treated by two chiropractors after he hurt his back playing basketball; however, the appellant said that he was unable to produce any evidence of treatment because the doctors had died. The appellant also testified that he might have been seeing Dr. Suddeth prior to the low back strain in 1978.

A letter was submitted from Richard Stadden, certified massage therapist, stating that he had treated the appellant for lower back pain between September 1978 and January 1979, and that the appellant had been referred by Anna May Williams, Director of Great Lakes College of Massage and Mechanotherapy. A letter was also submitted on behalf of the appellant by his former wife, who stated that from 1970 to 1990 the appellant suffered lower back pain. A coworker also stated that the appellant had suffered low back pain since 1970.

The appellant's case was remanded by the BVA to the RO for an investigation to include a review of office notes of Dr. Suddeth and Mr. Stadden, or, if records were unavailable, for an interview of these individuals to determine when and for what purpose they treated the veteran. Mr. Stadden had no records of treatment; however, he indicated that he had treated the appellant for a

"chronic back condition" from 1978 to 1980. According to Dr. Suddeth's secretary, the doctor had neither any treatment records nor any recollection of Mr. Graves. Based upon these findings, the Board's January 3, 1992, decision denied the appellant's claim for restoration of service connection. The present appeal followed.

## II. Analysis

### A. *Procedural Requirements of 38 C.F.R. § 3.105(d) (1993)*

In its January 3, 1992, decision, the BVA found that the appellant's in-service lumbosacral strain was acute and transitory and that the herniated nucleus pulposus with right sciatica was the result of the 1979 industrial accident. Thus, the Board concluded that the RO's October 1986 grant of service connection was clearly and unmistakably erroneous. The appellant maintains that he injured his back during service and that the post-service industrial accident aggravated his back condition.

Once service connection has been granted, 38 C.F.R. § 3.105(d) (1993) provides that service connection may be withdrawn only after certain procedural safeguards have been met, and the Secretary has met a high burden of proof:

> [S]ervice connection will be severed only where evidence establishes that it is clearly and unmistakably erroneous (the burden of proof being upon the Government).... When severance of service connection is considered warranted, a rating proposing severance will be prepared setting forth all material facts and reasons. The claimant will be notified at his or her latest address of record of the contemplated action and furnished detailed reasons therefor and will be given 60 days for the presentation of additional evidence to show that service connection should be maintained.

*See also Baughman v. Derwinski,* 1 Vet.App. 563, 566 (1991). The evidence of record shows that the VA met the procedural requirements of 38 C.F.R. § 3.105(d). The rating decision of December 1988 set forth all material facts and reasons for severance of service connection. The appellant was notified of the decision on May 17, 1989. He was given an opportunity to present additional evidence at a personal hearing. Accordingly, we find no error in the VA's compliance with the procedural safeguards of 38 C.F.R. § 3.105(d).

### B. *Secretary's Burden to Demonstrate Prior Grant Was CUE*

 The burden is on the Secretary to show that a prior grant of service connection was clearly and unmistakably erroneous. "In effect, [38 C.F.R.] § 3.105(d) places at least as high a burden of proof on the VA when it seeks to sever service connection as [38 C.F.R.] § 3.105(a) [1993] places upon an appellant seeking to have an unfavorable previous determination overturned." *Baughman,* 1 Vet.App. at 566. The VA must meet the burden of proof and demonstrate that the granting of service connection was clear and unmistakable error; failure to do so is error as a matter of law. *Id.; see also Oppenheimer v. Derwinski,* 1 Vet.App. 370, 372 (1991). In this regard, we hold that CUE is defined the same under 38 C.F.R. § 3.105(d) as it is under 38 C.F.R. § 3.105(a).

 In order for there to be "clear and unmistakable error" under 38 C.F.R. § 3.105(d), there must have been an error in the prior adjudication of the claim. *See Russell v. Principi,* 3 Vet.App. 310, 313 (1992) (en banc). Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied. *Id.* at 313. With regard to challenges to prior decisions by a claimant under 38 C.F.R. § 3.105(a), the Court held in *Russell* that a "clear and unmistakable error" must be the sort of error which, had it not been made, would have manifestly changed the outcome at the time it was made. *Id.* "It must always be remembered that CUE is a very specific and rare kind of 'error.' It is the kind of error, of fact or of law, that when called to the attention of later reviewers *compels* the conclusion, to which reasonable minds could not differ, that the result would have been *manifestly* different but for the error." *Fugo v. Brown,* 6 Vet.App. 40, 43 (U.S.1993). Errors that are "clear and unmistakable" are undebatable; that is, reasonable minds could only conclude that the origi-

nal decision was fatally flawed at the time it was made. *Id.* A determination that there was a "clear and unmistakable error" must be based on the record and the law that existed at the time of the prior decision of the agency of original jurisdiction or BVA, and subsequently developed evidence is not applicable. *Porter v. Brown,* 5 Vet.App. 233, 235–36 (1993).

■ The December 1988 RO decision severing service connection notes that the October 1986 rating decision granting 20% disability from July 30, 1986, "did not include a history of a back injury in 1979." It is difficult to determine what facts the RO considered in its October 1986 decision or whether the RO had all of the evidence before it. This is especially true because the RO did not provide any explanation for its decision to grant service connection for the appellant's back disability. Furthermore, the RO failed to indicate whether it made any credibility determinations regarding the appellant's claims. *See Marlow v. Brown,* 5 Vet.App. 146, 148 (1993).

Thus, the question is raised of whether, looking at the evidence of record predating the October 1986 RO decision, "reasonable minds could only conclude that the [October 1986] decision was fatally flawed." *Russell,* 3 Vet.App. at 313. The Secretary asserts that the October 1986 grant of service connection was clearly erroneous. The Secretary correctly points out that while the appellant's separation examination indicated a back injury during service, there was no finding of sequelae. In addition, the appellant registered no complaints of low back pain prior to the 1979 industrial accident.

Furthermore, there is no evidence to support the appellant's contention that he incurred a chronic back disability in service except for the appellant's statements of medical history. These statements of medical history appeared in reports of medical treatment for the period during the seven years prior to the October 1986 RO decision. In these statements, the appellant noted that he "has been having trouble with his back on and off ever since [service]."

■ The Court may set aside Board determinations regarding the existence of clear and unmistakable error only where the decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Russell,* 3 Vet.App. at 315; *see also* 38 U.S.C. § 7261(a)(3)(A). Based upon the record, we find that the Board's determination is well supported and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, we find no error in the Board's determination that the October 1986 RO determination was predicated upon clear and unmistakable error.

### C. Duty to Assist

■ Once an appellant has presented a well-grounded claim, the Secretary has a duty to assist the veteran in "developing the facts pertinent to the claim." 38 U.S.C. § 5107(a); *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991); *Murphy v. Derwinski,* 1 Vet.App. 78, 81–82 (1990). A well-grounded claim is one that is plausible and capable of substantiation. *Murphy,* 1 Vet.App. at 81. The duty to assist includes the duty to seek to obtain VA records, as well as records from private physicians. *White v. Derwinski,* 1 Vet.App. 519, 521 (1991); *Murphy,* 1 Vet. App. at 82.

■ At his personal hearing in 1990, the appellant testified that he had informed his employer during an employment physical examination in 1973 that he was suffering from a chronic back condition resulting from service-related injuries. The appellant testified that this information was recorded in his employment records. It appearing from the record that the appellant requested the VA to procure these private medical records, the VA failed in its statutory duty to assist the appellant by seeking to obtain the report of the 1973 physical examination from Lincoln Electric Company. The BVA is also required to seek to obtain the appellant's service medical records covering his military service in Germany. Accordingly, we find that the VA breached its duty to assist and therefore remand this case to the Board for development consistent with this opinion.

## D. Material Not Properly Before the Court

██ In his informal brief, the appellant invites this Court to review a letter from Dr. Karen Allison. However, this letter postdates the Board determination of this matter, and is not contained in the appellant's claim folder. The Court is precluded from considering any material that was not before the Secretary or the Board at the time of its decision since the Court reviews "the record of proceedings before the Secretary and the Board." 38 U.S.C. § 7252(b); *Stanton v. Brown,* 5 Vet.App. 563, 566 (U.S.1993); *Rogozinski v. Derwinski,* 1 Vet.App. 19, 20 (1990). Accordingly, the letter of Dr. Allison is not properly before this Court and will not be considered.

## E. Failure to Give Notice Regarding Use of Medical Treatise

██ In its January 3, 1992, decision, the Board cites to S. Turek, ORTHOPEDICS: PRINCIPLES AND THEIR APPLICATIONS (4th ed. 1984). The Board relied upon this treatise to refute the appellant's contentions; however, it offered him no notice of its use of an opportunity to respond to it. This Court has held that if the Board relies upon evidence developed after the most recent Statement of the Case or Supplemental Statement of the Case, it must provide a claimant with reasonable notice of the evidence, the reliance to be placed upon that evidence, and a reasonable opportunity to respond to the evidence. *Thurber v. Brown,* 5 Vet.App. 119, 126 (1993). Since the Board provided the appellant in this case with no notice of the use of the treatise, the reliance to be placed upon it, or a reasonable opportunity to respond to it, the Board's determination is vacated, and the matter is remanded for proceedings consistent with this opinion.

## III. Conclusion

Having reviewed the record, the appellant's pleadings, and the Secretary's brief, the Court VACATES the January 1992 decision of the Board of Veterans' appeals, and REMANDS this case for fulfillment of the duty to assist.

KRAMER, Judge, dissenting:

There are three bases for the severance of service connection: (1) clear and unmistakable error (CUE) in a prior determination, pursuant to 38 C.F.R. § 3.105(a), (d) (1993); (2) change in diagnosis in light of all accumulated evidence indicating that the diagnosis on which service connection was predicated is clearly erroneous, pursuant to 38 C.F.R. § 3.105(d); and (3) fraud, pursuant to 38 C.F.R. § 3.957 (1993). In its decision severing service connection, the Board of Veterans' Appeals (BVA) concluded that the October 1986 Regional Office (RO) determination granting service connection was predicated upon CUE. In reaching that conclusion, the BVA extensively reweighed facts without analyzing the prior determination and simply concluded that "[t]he record is clear that veteran's current back problems began with his postservice injury." *Oliver G. Graves,* BVA __-____, at 8 (Jan. 3, 1992). However, in *Russell v. Principi,* 3 Vet.App. 310, 313 (1992) (en banc), the Court specifically precluded this approach by stating that "a disagreement as to how the facts were weighed or evaluated" was insufficient to support a CUE determination.

In *Russell, supra,* at 313–14, this Court formulated a three-pronged test to determine the presence of CUE in a prior determination: (1) "[e]ither the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied;" (2) CUE must be the sort of error which, had it not been made, "would have manifestly changed the outcome at the time it was made;" and (3) a determination that there was CUE must be based on the record and the law that existed at the time of the prior decision. As the BVA decision was rendered prior to the Court's decision in *Russell, supra,* the CUE test formulated in that case was not applied. Nevertheless, the failure to apply this test cannot be obviated. *See Karnas v. Derwinski,* 1 Vet.App. 308 (1991).

The majority suggests that because the 1986 RO determination did not include a history of a back injury in 1979, this informa-

tion might not have been known to the adjudicator. However, this failure to recite history is irrelevant because the RO clearly knew of the 1979 injury, as this information was contained in a VA medical examination report dated prior to the RO decision. R. at 96. As the correct facts were before the adjudicator, CUE cannot be sustained on the basis of the majority's conjecture.

I would remand for proceedings consistent with the above analysis.