**David S. NORRIS, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 96–989.**

United States Court of Veterans Appeals.

May 21, 1998.

Kenneth M. Carpenter, Topeka, KS, was on brief for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Michael A. Leonard, Deputy Assistant General Counsel; and Michele R. Katina, Washington, DC, were on brief for appellee.

Peter Link, (non-attorney practitioner), Lakewood, CO, was on brief for Blinded Veterans Association as amicus curiae.

Before NEBEKER, Chief Judge, and FARLEY and IVERS, Judges.

IVERS, Judge:

The veteran appeals a May 14, 1996, decision of the Board of Veterans' Appeals (BVA or Board) which: (1) denied a claim of clear and unmistakable error (CUE) in prior rating decisions denying service connection for bilateral chorioretinitis; and (2) determined that new and material evidence had not been submitted to reopen a claim for service connection for bilateral chorioretinitis. Both parties filed briefs. In addition, an amicus curiae brief was submitted by the Blinded Veterans Association. The Court has jurisdiction of the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will affirm in part and vacate and remand in part, for readjudication consistent with this decision.

## I. FACTS

The veteran served on active duty in the U.S. Marine Corps from November 1965 to November 1969 and had service in Vietnam. Record (R.) at 52. The veteran's November 1965 enlistment examination noted that his distance vision was 20/100 in the right eye and 20/200 in the left eye, both corrected to 20/20. Diagnoses were simple myopia and incipient nasal pterygium of the left eye. R. at 25–30. Myopia is also known as near-sightedness. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1094 (28th ed.1994) [hereinafter DORLAND'S]. Pterygium is a wing-like structure, applied especially to a triangular fold of membrane, extending from the conjunctiva to the cornea. Id. at 1384. His report of medical history stated that he wore glasses and that he claimed to have a growth on the left cornea. R. at 32. Defective vision was noted in a December 1965 service medical record (SMR). R. at 33, 36. The remaining SMRs do not show treatment for his eyes. R. at 34–48. The veteran's November 1969 separation examination revealed that his vision was 20/150 corrected to 20/15 in the right eye and 20/20 for both corrected and uncorrected vision in his left eye. His field of vision, color vision, and intraocular tension were normal. R. at 50.

In November 1971 the veteran submitted a claim for histoplasmosis choroiditis that he

alleged had occurred in service. He stated that he had undergone an eye examination at a Navy hospital in Cherry Point, North Carolina, in October 1969. R. at 60–63. Histoplasmosis is an infection resulting from the inhalation or ingestion of spores of histoplasma capsulatum. DORLAND'S at 770. Choroiditis is uveitis affecting the thin pigmented vascular coat of the eye extending from the ora serrata to the optic nerve. *Id.* at 324. Uveitis is an inflammation of part or all of the vascular middlecoat of the eye. *Id.* at 1785. He also submitted a December 1970 report from J.D. Riley, M.D., that diagnosed the veteran with histoplasmosis choroiditis. "His best vision in the right eye is 20/200, because of hemorrhage and retinal scarring secondary to the choroiditis." R. at 58. The veteran's left eye vision was 20/20 with a corrective lens. Several small inactive choroidal lesions were noted in the left retina. Dr. Riley explained that the visual loss in the right eye was permanent. *Id.*

Records were requested for the October 1969 Cherry Point eye examination. R. at 65. In December 1971 the veteran underwent a VA examination that reported that the veteran had noticed a decrease in visual acuity during an October 1969 eye examination. R. at 70. The veteran's uncorrected distance vision was 10/200 in both eyes. Corrected vision was 20/200 in the right eye and 20/20 in the left eye. R. at 71. The diagnosis was "chorio-retinitis [sic], bilateral; central, severe, right; peripheral, mild, left; old, healed." R. at 72. Chorioretinitis is an inflammation of the chorioid and retina. DORLAND'S at 324.

A January 1972 rating decision denied service connection for bilateral chorioretinitis. R. at 82, 84. The regional office (RO) stated that the veteran's eye condition was "shown subsequent to service with no relating incident arising in service to cause the present eye condition." R. at 84.

In December 1975 the veteran requested that his claim for service connection for retinal choroiditis be reopened. R. at 94. A January 1976 letter from Dr. Riley stated that he had examined the veteran on January 21, 1970, when he complained of decreased visual acuity in the right eye which had been noted the prior week. He found that the veteran's visual acuity in the right eye was 20/100 and in the left eye 20/20 with best correction. He found macular hemorrhage and macular inflammation in the right eye. R. at 97. Macula lutea is an irregular yellowish depression on the retina. DORLAND'S at 978. There was evidence of peripapular atrophy involving the right eye. Two small depigmented areas were noted below the left macula. He had performed a uveitis survey and obtained a positive skin test for histoplasmosis. R. at 97. Dr. Riley further recounted that in April 1972 he had found that the veteran had a visual acuity of 20/400 in the right eye and 20/20 in the left eye, best correction recorded. The impressions of Dr. Riley and a consultant at the University Eye Clinic were that the veteran had "presumed hostoplasmosis [sic] chorditis with destruction of the right macula. There is no therapy available for the problem of the macular involvement of the right eye." R. at 97. A February 1976 VA examination noted that the veteran was "[n]ot legally blind." R. at 103.

An August 1976 VA memorandum regarding the interpretation of the veteran's service x-rays stated that the veteran had been diagnosed with "presumed histoplasmosis chorditis with destruction of the right macula." It was noted that a private physician had obtained a positive skin test for histoplasmosis. Review of the record disclosed that the veteran had not received treatment for this condition during service. Only x-rays from his induction examination were available. R. at 121.

A VA medical opinion, requested to determine whether the chest x-ray showed histoplasmosis at induction, stated:

A small film taken on 11–8–65 showed that there are calcific densities in the lung fields and particularly in the hilar regions which is probably related to an old, remote histoplasmosis. The lung fields, otherwise, are clear. The heart is not remarkable. The mediastinal and bony structures are normal.

R. at 123–25. A September 1976 rating decision denied service connection for histoplasmosis, chorioretinitis, bilateral. R. at 127,

129. The RO noted that the evidence indicated that the veteran had old histoplasmosis at the time of his induction x-ray and that it would not have been incurred in service and that any conditions " 'presumed histoplasmosis choroditis [sic]', which is subsequently developed would have existed prior to induction." R. at 129.

In March 1986 the veteran requested that his claim be reopened. R. at 138. A January 1986 letter from Richard S. Ruiz, M.D., indicated that he had treated the veteran since 1978 for his eye condition. R. at 135–36. An April 1986 report of contact revealed that the veteran was denied service connection for his eye condition because he had not submitted new and material evidence. He was notified that his condition had preexisted service and that it had not been aggravated by service. The veteran stated that he had never been told the condition preexisted service. R. at 143. January 1986 records from the Social Security Administration (SSA) reveal that the veteran was granted disability benefits. R. at 145–49, 160–62. In February 1986 Dr. Ruiz found that the veteran was legally blind. R. at 151. In a June 1986 rating decision, the veteran was granted non-service-connected ratings of 70% for bilateral chorioretinitis and a 0% rating for histoplasmosis. R. at 154–55.

In September 1986, the veteran indicated that he had talked to Dr. Ruiz, who revealed that there was little known about the disease. It was reported that Dr. Ruiz had stated that lesions ("calcific densities") in the lungs had no significance in diagnosis unless lesions were noted in the macular regions of the eye concurrently. According to the enlistment examination, no mention of lesions was made. The veteran stated, "This information alone destroys the current 'pre-existence' grounds for the VA!" R. at 165. An October 1986 evaluation by Dr. Franklin Porter, Low Vision Consultant at Baylor College of Medicine, revealed that there was no known medical cure for the veteran's eye condition. The etiology was presumed to be ocular histoplasmosis with resultant hemorrhages. R. at 173. In a December 1986 rating decision, the veteran's rating for his non-service-connected bilateral chorioretinitis was increased to 100%. R. at 175.

In February 1987 the veteran submitted an excerpt from a medical treatise asserting that chest x-rays were a poor diagnostic tool for determining histoplasmosis. R. at 181–85. An April 1987 rating decision found that new and material evidence had not been submitted to reopen the veteran's claim for service connection for the loss of his eyesight. R. at 189, 191.

In May 1987 the veteran requested that his claim for service connection for blindness, secondary to histoplasmosis which causes chorioretinitis, be reopened based on errors made by VA in their original and subsequent determinations. He contended that the September 1976 rating decision that denied service connection for histoplasmosis and chorioretinitis based on an interpretation of his induction x-ray as probably related to an old remote histoplasmosis was the first error made by VA with regard to the question of "reasonable doubt." He noted that "probably related" refers to reasonable doubt and indicated that several diagnostic tests were available to determine whether histoplasmosis was present, but that those tests had not been administered. He contended that the second error was concluding that chorioretinitis was a direct result of, or possibly related to, histoplasmosis. He referred to a medical treatise that indicated that uveitis had never been proven to be the cause of histoplasmosis. R. at 193. Other mistakes that he contended that VA made were: the failure to find in favor of the veteran when reasonable doubt existed; the failure to find in favor of the veteran when there was no positive medical evidence to show his condition preexisted service; and the failure to find in favor of the veteran when SMRs and private medical records showed that his condition was either incurred in or aggravated by service. R. at 194.

An October 1987 rating decision denied the veteran's claim of CUE in prior rating decisions and found that new and material evidence had not been submitted to reopen the veteran's claim for service connection for his eye condition. R. at 199. The veteran submitted a Notice of Disagreement and a State-

ment of the Case was issued. R. at 201–07. No substantive appeal was ever filed.

In November 1991 the veteran indicated that he was requesting "reconsideration" of his claim for service connection for his blindness. He also contended that he had submitted new and material evidence to reopen his claim for service connection for his blindness. R. at 220. In October 1991 Dr. Ruiz stated that the diagnoses of myopia and pterygium did not have anything to do with histoplasmosis and explained that symptoms of defective vision "may or may not be due to histoplasmosis and a myriad of other diagnoses." Dr. Ruiz stated that he was an ophthalmologist, not a radiologist, and did not feel "competent to read chest X-rays." Dr. Ruiz maintained that evidence of histoplasmosis in the chest did not rule histoplasmosis of the eye in or out. R. at 216–17.

In a February 1992 rating decision, the veteran was denied service connection for his eye condition. The RO considered the recently submitted evidence cumulative and also continued the denial of CUE in prior rating decisions. R. at 223, 225. The veteran submitted an NOD and an SOC was issued. R. at 227, 229–35. The veteran submitted a substantive appeal, alleging CUE in previous RO decisions and contending that he had submitted new and material evidence. R. at 237–38. Specifically, he stated that the RO had "clearly misinterpreted medical documents" as there had "never been any factual evidence of record to rebut [the] presumption of soundness." R. at 238.

In June 1994 the Board remanded the veteran's claims for further development. R. at 298–301. In August 1994 the veteran reiterated his previous contentions regarding his claims. R. at 308–09. Records were received from January 1970 to October 1991 showing treatment for the veteran's eye condition. R. at 328–46, 359–415. A May 1995 RO decision found that new and material evidence had not been submitted to reopen the veteran's claim for service connection for bilateral chorioretinitis. R. at 417–19. A Supplemental SOC was issued. R. at 422–25. The veteran submitted a substantive appeal alleging CUE in previous RO decisions and contending that new and material evidence

had been submitted to reopen his claim for service connection for bilateral chorioretinitis. R. at 430–33.

On May 14, 1996, the BVA determined that the veteran had failed to state a claim for service connection for chorioretinitis based upon CUE in prior unappealed rating decisions in view of the October 1987 rating decision denying such claim. The BVA also found that new and material evidence had not been submitted to reopen his claim for chorioretinitis. R. at 8.

## II. ANALYSIS

### A. CUE

Section 3.105(a) of title 38, Code of Federal Regulations, provides:

> Previous determinations which are final and binding, including decisions of service connection, degree of disability, age, marriage, relationship, service, dependency, line of duty, and other issues, will be accepted as correct in the absence of [CUE]. Where evidence establishes such error, the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of [CUE] has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a) (1997). A claim of CUE is a collateral attack on a final RO decision. *Smith v. Brown*, 35 F.3d 1516, 1521 (Fed.Cir. 1994); *Crippen v. Brown*, 9 Vet.App. 412, 417–18 (1996); *Duran v. Brown*, 7 Vet.App. 216, 224 (1994); *see also* Pub.L. No. 105–111, 111 Stat. 2271 (1997) (found at 38 U.S.C. § 7111) (allowing claims for CUE in prior BVA decisions). The Court has defined CUE as follows:

> Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied.... [CUE] is the sort of error which, had it not been made, would have manifestly changed the outcome ... [, an error that is] undebatable, so that it can be said that reasonable minds could

only conclude that the original decision was fatally flawed. *Crippen*, 9 Vet.App. at 418; *Russell v. Principi*, 3 Vet.App. 310, 313 (1992) (en banc).

■ In *Fugo v. Brown*, 6 Vet.App. 40, 43–44 (1993), this Court stated that, "even where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, ipso facto, clear and unmistakable." *See also Russell, supra.* Furthermore, a claim of CUE on the basis that previous adjudications had improperly weighed the evidence can never meet the stringent definition of CUE. *Id.; see also Eddy v. Brown*, 9 Vet.App. 52, 57 (1996).

The BVA found that the RO's prior unappealed decision in October 1987, denying service connection for retinal chorioretinitis based on CUE in January 1972 and September 1976, became final and a claim for CUE could not be raised again, citing the doctrine of res judicata. The BVA also found that the veteran was essentially making the same argument and using the same evidence previously considered, and that a claim for CUE cannot be continuously reviewed. *Olson v. Brown*, 5 Vet.App. 430 (1993). The Board found the veteran's arguments to be no more than a disagreement or a difference in opinion over the outcome of the adjudication. In May 1987 the veteran asked VA to reopen his claim; however, it was treated as a claim for CUE because he alleged several errors in the September 1976 RO decision. R. at 193–94.

### 1. January 1972 RO Decision

■ The veteran contends that CUE exists in the January 1972 RO decision because of the RO's failure to properly apply the criteria noted in 38 C.F.R. §§ 3.303(b) and (d). Appellant's Brief (Br.) at 10–11. He contends that, but for these errors, he would have been granted service connection for his eye disorder. *Id.* at 11. He disagrees with the way the evidence was weighed. At the time of the 1972 RO decision, there were two medical opinions of record, neither of which related the veteran's chorioretinitis to service. R. at 58, 71–72. Additionally, the veteran's SMRs showed that he had defective vision, myopia, and incipient nasal pterygium, none of which indicated that the veteran was suffering from chorioretinitis during service. R. at 25–50. The Court has held that a disagreement with how the evidence is weighed cannot constitute a claim for CUE. *Eddy* and *Russell*, both *supra; see also Caffrey v. Brown*, 6 Vet.App. 377 (1994). The Court notes that it was not until 1990 that the RO was required to list a summary of the evidence it had reviewed and the reasons and bases for denying the claim in its decisions. The Court finds that the BVA decision denying CUE in the January 1972 RO decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 38 U.S.C. § 7261(a)(3)(A).

### 2. September 1976 RO Decision

■ "Once there is a final decision *on a particular claim* of CUE, *that particular claim* of CUE may not be raised again; it is res judicata." *Olson*, 5 Vet.App. at 433; *see Schmidt v. Brown*, 5 Vet.App. 27, 29 (1993); *Russell*, 3 Vet.App. at 315. In May 1987 the veteran raised the issue of CUE in the September 1976 RO decision. R. at 193–94. In October 1987 the RO found that the September 1976 RO decision was not CUE. R. at 199. The veteran never appealed this decision. Therefore, there was a final decision regarding the September 1976 RO decision and the issue of CUE in the September 1976 RO decision cannot be raised again as it is barred by the doctrine of res judicata. *See Olson, Schmidt,* and *Russell,* all *supra.* The Court notes that the RO and BVA erred by continuing to consider his claim after the October 1987 final decision; however, the veteran was not prejudiced by this. *See* 38 U.S.C. § 7261(b) (Court shall take due account of rule of prejudicial error).

### B. Reasons and Bases

■ Pursuant to 38 U.S.C. § 7104(d)(1), a final decision of the Board must include "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record...." This Court has held "that the BVA [must] articulate with reasonable clarity its 'reasons or bases' for decisions, and in

order to facilitate effective judicial review, the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive." *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990). Where the Board fails to fulfill this duty, the Court is precluded from effectively reviewing the adjudication. *Meeks v. Brown,* 5 Vet.App. 284, 288 (1993); *Browder v. Brown,* 5 Vet.App. 268, 272 (1993). For the reasons set forth below, the Court holds that the BVA did not provide an adequate statement of "reasons or bases" for denying the veteran's claim to reopen based on all the evidence presented.

The BVA found the October 1991 Dr. Ruiz opinion to be too vague to be probative. The Court in *Lee v. Brown,* 10 Vet.App. 336, 339 (1997) stated, "[U]se of cautious language does not always express inconclusiveness in a doctor's opinion on etiology." The Court continued, "It follows then, that an etiological opinion should be viewed in its full context, and not characterized solely by the medical professionals choice of words." *Id.* Dr. Ruiz opined that the veteran's diagnoses of myopia and pterygium did not have anything to do with histoplasmosis. More significantly, Dr. Ruiz's statement points out that evidence of histoplasmosis in the chest does not, standing alone, rule in or rule out histoplasmosis in the eye. He explained that the veteran's symptoms of defective vision "may or may not" be due to his other conditions and indicated that the veteran's condition may have been subject to other diagnoses. The Board discounted Dr. Ruiz's statement as not probative without further discussion, falling far short of providing adequate reasons and bases. The Board accepted the linkage of the veteran's disabilities simply because it appeared throughout the record, even though no competent medical opinion had ever provided such a link, and because Dr. Ruiz's statement did not definitively rule out the connection. *But see Lee, supra.* Therefore, the Court finds that a remand is warranted for the Board to provide adequate reasons and bases for its acceptance or rejection of Dr. Ruiz's statement in connection with the veteran's claim. *Meeks, Browder,* and *Gilbert,* all *supra.*

## III. CONCLUSION

Upon consideration of the record, the Secretary's brief, the appellant's brief, and the amicus curiae's brief, the Court holds that the May 14, 1996, decision of the BVA is AFFIRMED as to the issue of CUE in prior RO decisions and VACATED and REMANDED for the Board to provide adequate reasons and bases for its decision regarding whether new and material evidence had been submitted to reopen the veteran's claim for service connection for chorioretinitis.