# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-0093

RODERICK C. STALLWORTH, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided      November 15, 2006    )

*Samuel M. Tumey*, of Liberty, Mississippi, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Richard Mayerick*, Deputy Assistant General Counsel; and *Yvette R. White*, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, MOORMAN, and LANCE, *Judges*.

MOORMAN, *Judge*, filed the opinion of the Court.  LANCE, *Judge*, filed a dissenting opinion.

MOORMAN, *Judge*:  The appellant, Roderick C. Stallworth, appeals through counsel a January 8, 2004, decision of the Board of Veterans' Appeals (Board) that determined there was no clear and unmistakable error (CUE) in a January 27, 1981, Board decision that denied restoration of service connection for schizophrenia.  Record (R.) at 1-9.  The court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review the January 2004 Board decision.  For the reasons that follow, the Court will vacate the decision on appeal and remand the matter for further proceedings consistent with this opinion.

## I.  FACTS

The appellant served on active duty in the U.S. Army from May 1974 to July 1975.  R. at 13. His service medical records reveal that in April 1975 he was diagnosed with schizophrenia.  R. at

16. A medical board found him medically unfit for further military duty and recommended that he be referred to a physical evaluation board and transferred to a VA hospital. R. at 50, 135-36. A June 1975 medical record from the Biloxi, Mississippi, VA hospital states in pertinent part:

> It was thought at first that his psychosis was due to his use of LSD and THC, but he relapsed after a short period of hospitalization, and the diagnosis was changed to schizophrenia. He improved on Mellaril, was considered unfit for further military duty, and sent to this hospital for a short-term hospitalization. He feels he doesn't need to be here. It is doubtful that we can keep him after he receives a discharge from service. The diagnosis still remains moot. He seems to have recovered rather rapidly from his experiences of schizophrenic episode. It is not known if he returned to the use of drugs after his first hospitalization in the Army . . . . Longitudinal history would tend to support a schizophrenic disorder . . . . Patient needs to understand that he has been mentally ill, that he will require anti-psychotic drugs for an indefinite period. His paranoid ideation will be difficult to change, however.

R. at 74. In an October 1975 VA regional office (RO) decision, the appellant was awarded service connection for schizophrenia and assigned a temporary total disability rating from July 1975 to August 1975, with a 50% disability rating effective from August 1, 1975. R. at 153.

Subsequent to his award of service connection, a December 1975 hospital summary report and an August 1976 hospital summary report recorded a diagnosis of "no mental disorder." R. at 181-82. In a September 1976 RO decision, the appellant's disability rating was reduced to 0%, effective as of January 1, 1977. R. at 155. Following an October 1976 hospitalization, which again recorded "no mental disorder," the RO continued the appellant's 0% rating. R. at 157, 159, 161.

From January 1977 through March 1977, the appellant was readmitted to the Biloxi, Mississippi, VA hospital for a period of 70 days. R. at 174-79. Four staff physicians diagnosed him with "no mental disorder." R. at 174. The hospital summary stated:

> Mr. Stallworth is soon to be 21 and is service connected for 9203 [the diagnostic code for schizophrenia in 1977]. He was first known to us in June 1975, and was a service patient who had a psychotic episode secondary to the use of LSD. Because his LSD psychosis was a bit longer than usual someone in the service labeled it schizophrenia, which in our opinion is an error in diagnosis. Dr. Dreher had the patient on his ward for 42 days in 1975, where he showed no overt psychotic symptoms. Diagnosis was carried forward to give the veteran the benefit of the doubt. Four subsequent periods of hospital observation and examinations failed to reveal evidence of a thought disorder, or any consistent reliable signs or symptoms of psychosis, schizophrenia, affective disturbance, or neurosis. Mr. Stallworth is intelligent, shows definite traits of an antisocial personality and has become adept at

2

deceptive practices at home and while in a penal situation to manipulate his transfer to a hospital. Whereas the undersigned physicians, psychiatrists, cannot assure anyone that Mr. Stallworth will change his behavior. We can state he has no evidence of a mental illness and he is fully responsible for his behavior. Further we consider his [service connection] diagnosis to be in error and mistakenly made, when the diagnosis should have been psychosis with drug or poison intoxication (other than alcohol) LSD. This condition is self limiting, now resolved with no sequelae discernable, and therefore not disabling at all. Patient is discharged regular, after a VA mandated review panel for legally committed patients, as competent, able to work, not in need of medication or treatment.

R. at 174.

Based on that hospitalization report, in April 1977, VA proposed to sever service connection. R. at 170, 172. The proposal for severance noted that the recent hospitalization "shows the veteran to have no mental disorder and that the original diagnosed schizophrenia was in error due to the veteran's psychotic episodes secondary to the use of LSD." R. at 170. The appellant was subsequently hospitalized in June 1977 and diagnosed with chronic undifferentiated schizophrenia. R. at 183. In November 1977, the RO severed service connection. R. at 193. Notwithstanding the June 1977 diagnosis, the RO determined:

> [S]ymptoms and reactions of the veteran to the [June 1977] hospitalization corresponded closely to the manipulated processes employed in the Biloxi Hospital. On several periods of hospitalization at VA Center, Biloxi, Mississippi, veteran showed no overt psychotic symptoms, in four periods of hospitalization there was no evidence of a thought disorder or any consistent reliable signs or symptoms of psychosis, schizophrenia, affective disturbance, or neurosis. The veteran is shown to be intelligent, shows definite traits of an anti-social personality and has become adept at deceptive practices at home and while in a penal situation to manipulate his transfer to a hospital. The schizophrenic reaction in service was evidently associated with drug or poison intoxication, probably LSD. This condition is self-limiting, now resolved with no sequelae discernible, therefore not disabling at all.

*Id.* The RO concluded that the assignment of service connection for an acute episode of schizophrenia was clearly and unmistakably erroneous. *Id.*

Within the one-year appeal period, the appellant made several requests for reevaluation of his service-connected disability, and, in August 1978, a request for restoration of service connection. R. at 236. He was hospitalized from November 1978 through January 1979 and was diagnosed with chronic undifferentiated schizophrenia. R. at 202. An August 1979 neuropsychiatric examination

3

report included a diagnosis of paranoid schizophrenic reaction, precipitated by and possibly perpetuated and aggravated by illicit drug use. R. at 212. On December 4, 1979, the appellant was notified that "while the medical evidence indicates that you are suffering from a nervous condition, there has been no new evidence brought forth that this condition was incurred in or aggravated by your military service. In the absence of this evidence, our decision of severing your service connection cannot be changed." R. at 217.

The Board, in the 1981 decision being attacked for CUE, adjudicated a claim for restoration of service connection for schizophrenia and concluded that the grant of service connection for schizophrenia, paranoid type, by the agency of original jurisdiction was clearly and unmistakably erroneous. R. at 235-43. In reaching this determination, the Board evaluated the evidence before the 1977 RO and rendered the following determination:

> [T]he evidence confronting the rating board in November 1977 did not show or establish that the veteran had an acquired chronic psychiatric disorder, including a chronic psychosis, relatable to service. The in[-]service experience was shown to have been drug related or induced, with no chronic residual activity indicative of a chronic acquired psychosis for more than 18 months following discharge. The finding of no mental disorder on a number of hospitalizations by the [VA] within that time period, in the Board's opinion, neither represent[s] a change in diagnosis nor a finding that a chronic schizophrenic disorder was in remission. On the contrary, the records of those hospitalizations merely further elaborate on the nature of the psychiatric involvement then and previously experienced by the veteran. Whether hospitalizations in June and November 1977 establish that the veteran had, at those times, a chronic acquired psychosis, is essentially moot in view of the fact that even if so such disorder would have first become manifested more than one year after discharge from service. Under the circumstances, the rating action in November 1977 severing service connection for schizophrenia was supportable.

R. at 242. The Board further found that the reports from hospitalizations since 1977 did not definitively establish that the appellant had a chronic acquired psychosis or that any psychosis had its onset in service or became manifest within one year of service. R. at 242-43.

In a December 14, 1990, Board decision, service connection for schizophrenia was granted based on the Board's finding that new and material evidence had been submitted to establish that a psychosis was incurred in service. R. at 253. A subsequent Board decision refused to award an effective date earlier than May 10, 1984, the date of the appellant's claim to reopen. R. at 255-60.

4

On October 15, 2002, the appellant, through counsel, filed a Motion for Revision on the grounds of CUE. R. at 302-10. The appellant challenged the rating decisions dated April 1977, November 1977, and November 1979, as well as Board decisions dated January 27, 1981, December 14, 1990, and September 27, 1993, for CUE. *Id.* On January 8, 2004, the Board issued the decision on appeal. R. at 1- 9. The Board determined that the 1981 Board decision did not contain CUE. R. at 9. It noted that the April and November 1977 and November 1979 rating decisions were subsumed by the Board's January 1981 decision. R. at 2. The Board also noted that, although the appellant referred to the December 1990 and September 1993 Board decisions, he raised arguments pertaining only to the 1981 Board decision. R. at 3.

On appeal, the appellant argues that there was CUE in the 1981 Board decision upholding severance because neither the proposal for severance nor the rating decision bringing it about alleged any facts not brought before the original adjudicator or any violation of law or regulations in the decision making the award. Appellant's Brief (Br.) at 11. He maintains that the adjudicator did nothing more than take issue with the findings of the medical board and the original adjudication. Br. at 12. To the extent that the Board relied on a change in diagnosis as a basis for severance, the appellant asserts that 38 C.F.R. § 3.105(d) should be read to require that a change in diagnosis may be a basis for severance only when all other criteria for CUE have been met. Br. at 15-16. Thus, he maintains that a certifying physician's opinion that a prior diagnosis was clearly erroneous is merely another opinion added to the mix and consequently does not establish the degree of indisputability required to establish CUE. Br. at 18-19. He also argues that the 1981 Board erred when it discounted two schizophrenia diagnoses made subsequent to the certifying physician's opinion that the original diagnosis was in error. Br. at 20-21. The appellant argues that if the physician's certificate is equivocal, or, as in this case, contradicted by other evidence, it does not rise to the required level of certainty for severance of service connection. Br. at 22. Finally, he maintains that the 1981 Board failed to properly apply the appropriate standard for severance of service connection. Br. at 25.

The Secretary argues that the Board's decision should be affirmed because the law in 1981 stated that a change in diagnosis may be accepted as a basis for severance action, and the Board adequately explained that the 1977 medical evidence satisfied the requirements of 38 C.F.R.

5

§ 3.105(d). Secretary's (Sec'y) Br. at 9. He also contends that the errors alleged by the appellant are not outcome determinative, and that the appellant appears to be focusing on the severance proceedings rather than on what the Board did in the decision on appeal. Sec'y Br. at 10-11. In response, the appellant argues that "the Board's 2004 decision is based primarily on a review of the record and a determination that the 1981 decision was 'plausible.' The entire thrust of the appeal to the Board and to the Court was that 'plausible' as a basis for severance was insufficient." Reply Br. at 2. The appellant maintains that the Board in 2004 misapprehended the law that the Board in 1981 was required to follow. *Id.*

## II. ANALYSIS

### A. Applicable Law

#### 1. Revision Based on CUE

A request for revision on the basis of CUE is a collateral attack on a final decision by an RO or the Board. *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 696-98 (Fed. Cir. 2000), *cert. denied*, 532 U.S. 973 (2001). A prior final decision must be reversed or revised where evidence establishes CUE. *See* 38 U.S.C. §§ 5109A and 7111. To establish CUE in a final decision of an RO or the Board, a claimant must show that (1) either the facts known at the time were not before the adjudicator or that the law then in effect was incorrectly applied, and (2) had the error not been made the outcome would have been manifestly different. *Grover v. West*, 12 Vet.App. 109, 112 (1999). The claimant must provide some degree of specificity as to what the alleged error is and, unless it is the kind of error that, if true, would be CUE on its face, "persuasive reasons must be given as to why the result would have been manifestly different but for the alleged error." *Fugo v. Brown*, 6 Vet.App. 40, 44 (1993); *see also Bustos v. West*, 179 F.3d 1378, 1380-81 (Fed. Cir. 1999) (adopting this Court's interpretation of 38 C.F.R. § 3.105), *cert. denied*, 528 U.S. 967 (1999). The alleged error must be "undebatable," not merely "a disagreement with how the facts were weighed or evaluated." *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc); *Damrel v. Brown*, 6 Vet.App. 242, 246 (1994).

When the Court reviews a Board determination that there was no CUE in a prior final decision, the Court "cannot conduct a plenary review of the merits of the original decision." *Archer*

6

*v. Principi*, 3 Vet.App. 433, 437 (1992). The Court's review is limited to determining whether the Board decision before it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 38 U.S.C. § 7261(a)(3)(A), and whether it is supported by an adequate statement of "reasons or bases," 38 U.S.C. § 7104(d)(1). *See Joyce v. Nicholson*, 19 Vet.App. 36, 43-44 (2005); *Lane v. Principi*, 16 Vet.App. 78, 83-84 (2002), *aff'd*, 339 F. 3d 1331 (Fed. Cir. 2003) (affirming this Court's longstanding precedents regarding standard of review in CUE determinations); *Russell*, *supra*.

### 2. Severance of Service Connection

"[S]ervice connection will be severed only where evidence establishes that it is clearly and unmistakably erroneous (the burden of proof being on the government)[,]" and only after certain procedural safeguards have been met. 38 C.F.R. § 3.105(d) (2006). At the time of the 1981 Board decision being challenged for CUE, a change in diagnosis could have been accepted as a basis for severance action if a proper medical authority certified that, "in the light of all accumulated evidence, the diagnosis on which service connection was predicated is clearly erroneous." 38 C.F.R. § 3.105(d) (1980). Specifically, the regulation provided, in pertinent part, as follows:

> [S]ervice connection will be severed only where evidence establishes that it is clearly and unmistakably erroneous (the burden being on the Government) . . . . A change in diagnosis may be accepted as a basis for severance action if the examining physician or physicians or other proper medical authority certifies that, in the light of all accumulated evidence, the diagnosis on which the service connection was predicated is clearly erroneous. This certification must be accompanied by a summary of the facts, findings, and reasons supporting the conclusion . . . .

*Id.*

Severance of service connection based on any standard less than that established by § 3.105(d) is erroneous as a matter of law. *Graves v. Brown*, 6 Vet.App. 166, 170 (1994); *see also Baughman v. Derwinski*, 1 Vet.App. 563, 566 (1991). And, although the Court has equated the standards for severance of service connection and for demonstrating CUE in a prior final VA decision, there are critical differences that render equating those standards an oversimplification.

In this regard, we note that the Secretary's regulation providing for the severance of service connection, in 1980 and today, is written in the present tense. *See* 38 C.F.R. § 3.105(d). Consequently, the severance decision focuses–not on whether the original decision *was* clearly

erroneous–but on whether the current "evidence establishes that [service connection] *is* clearly erroneous." 38 C.F.R. § 3.105(d) (emphasis added). Hence, the Secretary's *burden* in a severance proceeding in finding clearly erroneous the diagnosis upon which the original award of service connection was based is not a requirement that he prove clear and unmistakable error in the original decision in the same manner a claimant would show CUE under sections 5109A or 7111, i.e., the Secretary is not limited to the law and the record that existed at the time of the original decision. Section 3.105(d), through its provision that a change in diagnosis may be accepted as a basis for severance, necessarily contemplates that the Secretary is not limited in the same manner as a claimant attempting to demonstrate CUE in a prior final decision. *Daniels*, 10 Vet.App. at 480. VA may consider medical evidence and diagnoses that postdate the original award of service connection to demonstrate that the diagnosis on which service connection was predicated is clearly erroneous. *Id*. "If the Court were to conclude that . . . a service connection award can be terminated pursuant to § 3.105(d) only on the basis of the law and record as it existed at the time of the award thereof, VA would be placed in the impossible situation of being forever bound to a prior determination regardless of . . . later developments in the factual record." *Id.* (quoting *Venturella v. Gober*, 10 Vet.App. 340, 343 (1997) (Steinberg, J., concurring)).

### B. Application of Law to Facts

On appeal, the appellant argues, among other things, that the 2004 Board erred by applying the wrong standard of review in determining whether the 1981 Board decision contained CUE. As explained below, because the Board in 2004 was unclear regarding the standard of review that it was applying, the Court's ability to review the Board decision on appeal is impaired and a reasons-or-bases remand is warranted.

Admittedly, this case involves the application of a complex legal framework with multiple levels, and differing standards, of review. In 1981, in order to properly sever service connection, VA had the burden of demonstrating that the evidence then before it established that the diagnosis upon which the appellant's prior award of service connection for schizophrenia was based was clearly and unmistakably erroneous. *See* 38 C.F.R. § 3.105(d). No appeal of the 1981 Board decision being available, that decision was final. Consequently, in an attempt to overcome that decision, the appellant submitted a motion to revise the 1981 Board decision on the basis that the 1981 decision

was the product of CUE. In ruling on the motion to revise the 1981 Board decision on the basis of CUE, the Board in 2004 was required to review the 1981 Board decision to determine whether the appellant had demonstrated that (1) either the facts known at the time were not before the adjudicator or that the law in effect in 1981 was incorrectly applied, and that (2) had the error not been made the outcome would have been manifestly different. *Grover*, 12 Vet.App. at 112. We, in turn, are now reviewing the 2004 Board decision only to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and whether it is supported by an adequate statement of "reasons or bases." *See* 38 U.S.C. §§ 7261(a)(3)(A), 7104(d)(1).

Here, the problem lies entirely in the statement of reasons or bases the Board rendered in 2004. In that regard, exactly what standard the Board applied in 2004 in reviewing the 1981 Board decision is not entirely clear. In its finding that the 1981 Board decision did not contain CUE, the Board stated that "[w]hile there may be a different view of the evidence more favorable to the veteran, there is a ***plausible basis*** in the evidentiary record for the Board's January 1981 decision and it is thus not absolutely clear or undebatable that there would have been a different outcome." R. at 7 (emphasis added). After further discussion, the 2004 Board reiterated that "there [was] a ***plausible basis*** for the Board's January 1981 decision." R. at 8 (emphasis added). The Board then applied a different standard of review, concluding: "The veteran has not alleged or demonstrated that there was error in the January 1981 Board decision of the kind which reasonable minds could not differ, and that the results would have been manifestly different but for the error. Accordingly, the January 1981 Board decision does not contain [CUE]." R. at 8-9 (citations omitted). Because we are not satisfied that the Board applied the correct standard of review in determining whether the 1981 Board decision contained CUE, we will vacate the decision and remand the matter to the Board for further proceedings consistent with this decision.

Our dissenting colleague has focused on the fact that the Board in 2004 used the words "[w]hile there may be a different view of the evidence more favorable to the veteran" as providing a finding of fact that necessitates reversal in the context of a CUE claim. However, on its face, that allowance of a possibility that the facts could be viewed differently is not equivalent to a finding of fact by the Board in 2004 that there *was* a different view of the evidence more favorable to the veteran. Further, and more importantly, the very nature of a procedure to sever service connection

9

presupposes that there were sufficient facts to initially confer service connection and that the facts upon review of the original evidence, and other evidence gathered following the original decision, later indicate that the original decision was clearly and unmistakably erroneous. *See supra* at 8-9. The mere fact that a Board conducting a CUE analysis utters the possibility that there could be another view of the facts, does not, as our colleague argues, ipso facto render the prior Board decision clearly erroneous and subject to reversal, thus restoring service connection. The Board did not specifically state that there *was* an alternative view of the evidence in 1981; instead, it merely raised the *possibility* that there may have been another view of the evidence. Rather, such ambiguous language requires that the Board conducting the CUE review render a decision that reflects that it understands and applies the correct analysis in the first instance.

On remand, the Board must realize that the "plausible basis" standard is irrelevant in determining whether the Board's 1981 finding was the product of CUE. R. at 7. The proper standard for the Board to apply is the following three-part test to determine whether the 1981 Board decision is the product of CUE: (1) whether "[e]ither the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied"; (2) whether the existence of an error is "undebatable"; and (3) whether the error is of the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made." *Damrel*, 6 Vet.App. at 245 (quoting *Russell*, 3 Vet.App. at 313-14). In making these determinations, the decision must be based on the record and law that existed at the time of the prior adjudication in question. This evidentiary standard has been analyzed in a number of the Court's opinions. "Most of these address the appeals of claimants seeking a finding of CUE in a past denial of benefits. However, the Court has held that the standard is equally applicable to VA where the issue is severance of service connection based on CUE." *Wilson v. West*, 11 Vet.App. 383, 386 (1998). On remand, the Board must determine whether the 1981 Board decision severing the prior grant of service connection was the product of CUE, and that determination requires an analysis of whether VA properly applied the stringent regulatory procedure for severance established by § 3.105(d). That issue thus will be remanded to the Board for readjudication.

10

### III. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' briefs, the January 8, 2004, Board decision is VACATED. The matter is REMANDED to the Board for proceedings consistent with this opinion.

LANCE: *Judge*, dissenting: While I agree with the black-letter law holding of the majority, I must respectfully dissent from its refusal to apply that holding to the facts of this case. The majority is correct that the Secretary's evidentiary burden in a severance adjudication is the same as that on an appellant trying to demonstrate CUE in a prior decision. The evidence must be so convincing that "reasonable minds could not differ." 38 C.F.R. § 20.1403(a) (2006). *See, e.g., Fugo v. Brown*, 6 Vet.App. 40, 43 (1993). In this case, the Board admitted that "there may be a different view of the evidence more favorable to the veteran." R. at 7. I do not see a way to read this statement without reaching the conclusion that the Board found that reasonable minds could differ as to how to interpret the evidence of record at the time of the Board's January 1981 decision. This conclusion is dispositive and the Board cannot deny the appellant's CUE motion on remand without vacating this finding. I see no reason why the Secretary should be awarded a gratuitous opportunity to revise his factual finding so it will conform with an outcome unfavorable to the veteran. *Cf.* 38 U.S.C. § 7252 (the Secretary may not seek review of Board decisions).

The majority argues "that allowance of a possibility that the facts could be viewed differently is not equivalent to a finding of fact by the Board in 2004 that there *was* a different view of the evidence more favorable to the veteran." *Ante* at 10. However, that assertion has no basis in the governing standard, which is "reasonable minds could not differ." The Board's comment reveals with certainty that it reviewed and considered the evidence of record at the time of the severance decision. Having done so, it is impossible to see how the Board on remand could conclude that "reasonable minds could not differ" about how to view the evidence after admitting that there may be a view favorable to the appellant. Logically, if the evidence was truly clear and undebatable, then the Board would have come to the conclusion that there was no possibility that the evidence could be viewed otherwise and would have made that finding instead.

11

The interpretation embraced by the majority results in the Board discussing the evidence in terms that are unrelated to any standard of proof known to veterans law. This is particularly curious given that the remainder of the sentence from the Board decision is phrased in terms of another well known standard: "There is a plausible basis in the evidentiary record for the Board's January 1981 decision." *See, e.g.*, *Karnas v. Derwinski*, 1 Vet.App. 308, 311 (1991) (discussing the plausible-basis standard). There is simply no justification for creating a new standard where there may be alternative views of the evidence even though one of those views is undebatable. When an adjudicative body discusses the weight of the evidence before it, it is irrational to assume it did so in meaningless terms. If the Board's decision was framed solely in terms of a standard that was insufficient to resolve the matter, then a remand would be appropriate. For example, if the Board's comment on the evidence had been limited to the statement that "there is a plausible basis in the evidentiary record for the Board's January 1981 decision," then I could agree that a remand was appropriate as such a finding would simply be irrelevant to the governing standard. However, the majority goes beyond this to hold that the statement that "there may be a different view of the evidence more favorable to the veteran" is mere gibberish that can be edited out of the Board's decision.

To the extent that the majority comments that "the very nature of a procedure to sever service connection presupposes that there were sufficient facts to initially confer service connection," *ante* at 10, this is a red herring that tries to alter the nature of the Board's admission. The Board did not say that there may be *some* evidence supporting service connection. (This, of course, will always be true in a severance proceeding.) The Board said there may be a view of the whole body of evidence favorable to the veteran. This evaluation of the whole evidentiary picture is not for the Court to second guess, ignore, or interpret away. Regardless of how flawed or unsupported by the record, once the Board has made a factual finding that favors the veteran, the Court must accept that finding even if the record is devoid of any evidence to support it. *See Sutton v. Nicholson*, 20 Vet.App. 419, 422 n.1 (2006) (accepting the Board's finding that the appellant did not receive an RO decision despite the lack of any analysis or evidence rebutting the presumption of regularity).

The unjustified remand in this case not only "perpetuates the hamster-wheel reputation of veterans law," *Coburn v. Nicholson*, 19 Vet.App. 427, 434 (2006) (Lance, J., dissenting), but also

risks depriving the appellant of the benefits that he should be awarded based on the factual finding already made by the Board. Even if the Board reaffirms its finding on remand and grants the appellant's CUE motion, the appellant will have been denied his rightful benefits for many additional months, if not years, without any remedy for this delay. *See Matthews v. Nicholson*, 456 F.3d 1377, 1380 (Fed. Cir. 2006) (holding that no interest is paid on benefits awarded based on a finding of CUE). Accordingly, I would reverse the decision of the Board on appeal and remand the matter for an award of benefits based on the CUE in the 1981 Board decision.