﻿Citation Nr: AXXXXXXXX
Decision Date: 03/18/19 Archive Date: 03/18/19

DOCKET NO. 181218-1658
DATE: March 18, 2019

ORDER

The severance of service connection for Non-Hodgkin’s lymphoma as presumptively due to herbicide exposure in Guam, effective August 1, 2018 is proper; the appeal is denied. 

FINDINGS OF FACT

1. In a January 2018 decision, the Agency of Original Jurisdiction (AOJ) proposed to sever service connection for Non-Hodgkin’s lymphoma and notified the Veteran of his right to submit additional evidence and to have a hearing. 

2. In a May 2018 decision, the AOJ severed service connection for Non-Hodgkin’s lymphoma effective August 1, 2018, more than 60 days thereafter. 

2. The grant of service connection in June 2017 for Non-Hodgkin’s lymphoma as due to herbicide agent exposure in Guam was clearly and unmistakably erroneous. 

CONCLUSION OF LAW

The criteria for severance of service connection for Non-Hodgkin’s lymphoma was proper and restoration is denied. 38 U.S.C. § 5109A (2012); 38 C.F.R. § 3.105 (d) (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty from July 1973 to July 1975.

The Board notes that the rating decision on appeal was issued in November 2018. In August 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

The decision to sever service connection for Non-Hodgkin’s lymphoma was proper and service connection remains denied.

The Veteran argues that there was a clear and unmistakable error in a previous decision to sever service connection for Non-Hodgkin’s lymphoma. 

Once service connection has been granted, it will be severed only where the evidence establishes that the grant of service connection was clearly and unmistakably erroneous (the burden of proof being on the Government). 38 C.F.R. § 3.105 (d) (2018); Stallworth v. Nicholson, 20 Vet. App. 482 (2006); Daniels v. Gober, 10 Vet. App. 474 (1997). Severance of service connection based on any standard less than that outlined in 38 C.F.R. 3.105 (d) is erroneous as a matter of law. Stallworth, 20 Vet. App. at 488; Graves v. Brown, 6 Vet. App. 166, 170 (1994).

Certain additional procedural requirements apply where service connection is to be severed, and if they are not followed, the severance of service connection is generally void ab initio. Specifically, a rating proposing severance must be prepared setting forth all material facts and reasons. This was done in January 2018. The Veteran must be notified at his latest address of record of the contemplated action and the detailed reasons for the severance and must be given 60 days to present additional evidence to show that service connection should be maintained. 38 C.F.R. § 3.105 (d). The Veteran may also request a hearing within 30 days of receiving notice. 38 C.F.R. § 3.105 (i). This notice was provided in the January 2018 letter accompanying the rating decision proposing severance. In May 2018, a rating decision was issued that severed service connection for Non-Hodgkin’s lymphoma, effective more than 60 days thereafter, and explained the reasons for finalizing the severance of service connection. 

Clear and unmistakable error is a very specific and rare kind of error. It is the kind of error in fact or law that, when called to the attention of later reviewers, compels the conclusion, to which reasonable minds could not differ, that the result would manifestly have been different but for the error. Generally, the correct facts, as they were known at the time, were not before the RO, or the statutory and regulatory provisions extant at the time were incorrectly applied. Even when the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be ipso facto clear and unmistakable. Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993) (citing Russell v. Principi, 3 Vet. App. 310, 313 (1992)). To warrant revision of a decision on the grounds of clear and unmistakable error in a severance of service connection case, there must have been an error in the adjudication of the appeal that, had it not been made, would have manifestly changed the outcome, i.e., whether, based on the current evidence of record, a grant of service connection would be clearly and unmistakably erroneous. Stallworth, 20 Vet. App. 482 (2006).

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303 (2018). If there is no showing of a resulting chronic condition during service, then a showing of the continuity of symptomatology after service is required to support a finding of chronicity for certain diseases. 38 C.F.R. §§ 3.303 (a), (b), 3.309(a) (2018); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d) (2018).

To establish service connection for the claimed disorder, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical, or in certain circumstances, lay evidence of a nexus between the claimed in-service disease or injury and the current disability. 38 C.F.R. § 3.303 (2018); Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

A veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period starting on January 9, 1962, and ending on May 7, 1975, is presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service. 38 U.S.C. § 1116 (2012); 38 C.F.R. § 3.307 (a)(6)(iii) (2018). The presumption of herbicide agent exposure also applies to Veterans who served between April 1, 1968 and August 31, 1971, in a unit that, as determined by the Department of Defense, operated in or near the Korean DMZ in an area which herbicide agents were known to have ben used. 38 C.F.R. § 3.307 (a)(6)(iv) (2018). Finally, an individual who performed service in the Air Force or Air Force Reserve under circumstances in which the individual concerned regularly and repeatedly operated, maintained, or served onboard C-123 aircraft known to have been used to spray an herbicide agent during the Vietnam era shall also be presumed to have been exposed to herbicide agents. 38 C.F.R. § 3.307 (a)(6)(v) (2018). Under no other circumstances is herbicide agent exposure presumed. 

For individuals who have been exposed to herbicide agents, presumptive service connection is available for Non-Hodgkin’s lymphoma associated with exposure to herbicide agents listed under 38 C.F.R. § 3.309 (e) if the disease becomes manifest to a degree of 10 percent or more at any time after service. 38 C.F.R. § 3.307 (2018). 

In a November 2016 Radiation Risk Activity Information Sheet completed by the Veteran, he indicated that he was involved in Operation New Life in Guam in April 1975 and stayed in the exposed area for three months. 

The RO in a rating decision of June 2017 granted service connection for Non-Hodgkin’s lymphoma, effective September 12, 2016. At the time of this decision, the Veteran’s service and VA treatment records, as well as personnel records, including DD-214, showing service in Hawaii, were associated with the claims folder, and the RO relied on the medical diagnosis of active marginal zone lymphoma, and explained that “service-connection for Non-Hodgkin’s lymphoma [w]as being granted on the basis of presumption due to Agent Orange exposure.”

A June 2017 subsequent statement by the Veteran indicates that he was sent to Guam to help with the refugees who had fled Vietnam. Further, a Formal Finding issued in December 2017 noted that VA lacked the information for the U.S. Army, and Joint Services Record Research Center (JSRRC) requires to verify herbicide exposure in Guam. The Formal Finding listed the efforts that were made to obtain information required by the JSRRC including: a development letter sent to the Veteran in November 2017 with no reply, a review of the personnel records and service treatment records, a review of the claims file, and a review of the Veteran’s DD-214. 

In the January 2018 proposed rating action, the RO informed the Veteran of the proposed severance of service connection for his non-Hodgkin’s lymphoma based on a finding of clear and unmistakable error. The RO noted that upon secondary review of the claim in response to his request for an increased rating, there was no evidence of record showing assignment to locations that would warrant a presumption of exposure to herbicide agents. The RO also acknowledged that the Veteran’s submission of articles purporting that assignment to Guam is related to herbicide agent exposure, was insufficient without law or regulatory guidance supporting the relationship. Additionally, his personnel records showed no assignment to Guam. The Veteran was asked to submit additional information on how he believed that he was exposed to herbicide agents. Further, even if it were assumed that the Veteran served briefly in Guam, the preponderance of the evidence does not show that he was actually exposed to herbicides. 

In March 2018, the Veteran submitted a copy of a DD Form 710 from April 1983 showing laboratory analysis of water in Guam. It listed several chemicals and an annotation from the Veteran that stated, “Note: this is an annual test. In the 1970s they had no equipment to remove these poisons from the water.” A second annotation stated, “As you can see these rainbow herbicides are in the well water. The only logical way to get there would be from us[]ing them to kill weeds.” The chemicals listed on the report did not include 2,4-D; 2,4,5-T and its contaminant TCDD; cacodylic acid, or picloram, which are the “herbicide agents” defined in VA regulations. 38 C.F.R. § 3.307(a)(6). Therefore, the DD Form 710 does not show that herbicide agents were present in Guam in the 1970s. It is not probative evidence in support of a finding that exposure to herbicides as defined by VA regulations actually occurred. 

In March 2018, the Veteran also submitted photos of barrels that he described as fuel storage tanks. One of the photos was a photograph of Andersen Air Force Base from a satellite with a statement that various toxic chemicals were stored there and an annotation that “Drums of [h]erbicides were also stored here.” He submitted a statement from R. S., who stated that he was stationed at Andersen Air Force Base on Guam in 1969 and 1970 and that he sprayed herbicides. There is no indication that R. S. served with the Veteran in this case, and his statement does not support a finding that the Veteran was directly exposed to herbicide agents. The Veteran also submitted documents stating generically that toxic chemicals were located on Guam. However, the chemicals listed were not herbicide agents as defined in VA regulations. These documents lack probative value. 

The Veteran in this case is not competent to identify an herbicide agent as specified in 38 C.F.R. § 3.307(a)(6), as he does not have the requisite chemical knowledge. In this case, he has professed no specialized ability to detect herbicide agents in the environment, outside of labeled containers, and his assertions of exposure are essentially speculative. See Bardwell v. Shinseki, 24 Vet. App. 36 (2010). His lay statements alone are not sufficient to establish that exposure to herbicide agents actually occurred, and his assertions must be weighed against other evidence of record, including the lack of documentary evidence of use of herbicides. Id. 

The rating decision of May 2018 formally severed service connection for Non-Hodgkin’s lymphoma, effective August 1, 2018. The RO indicated that service connection was being severed because there was no evidence of record showing that the Veteran could be presumed to have been exposed to herbicide agents. The RO further indicated that a service treatment records contained no complaints treatment or diagnosis of Non-Hodgkin’s lymphoma and that Guam had not been recognized by the Department of Defense or VA as a location where herbicide agents were used or stored.

Additional evidence of record since the May 2018 rating decision includes a June 2018 statement from A. A. M., a fellow service member, indicating that he and the Veteran were deployed in July 1975 to Guam on a humanitarian mission for 40-60 days. 

The evidence of record shows that the Veteran was stationed in Hawaii, as his overseas assignment. There is no showing in the record that the Veteran ever served in Guam. The only evidence of record that the Veteran went to Guam, is his and A. A. M.’s competent lay statements. Nonetheless, even if the Veteran did travel to Guam on a humanitarian mission as he and his fellow service member A. M. so contends, Guam is not a location set forth by VA regulations as an area where an individual may be presumed to have been exposed to herbicide agents. 38 C.F.R. § 3.307(a)(6) (2018). Therefore, the June 2017 rating decision contained CUE by finding that the Veteran was presumed exposed to herbicide agents. 

Further, the evidence does not show that the Veteran was directly exposed to herbicide agents. The Veteran’s assertions regarding herbicide exposure in Guam and the submission of articles purporting that assignment to Guam is related to herbicide exposure, are outweighed by the other evidence of record, specifically the Department of Defense and VA’s non-designation of Guam as a location where herbicides were used or stored. Additionally, the Veteran’s DD-214 shows that he was on assignment in Hawaii, rather than Guam, during his period of active service. 

Lastly, the Veteran’s treatment records show no complaints, treatment, or diagnosis of Non-Hodgkin’s lymphoma in-service. It was not until over 40 years after service that the Veteran was diagnosed with Non-Hodgkin’s lymphoma. Further, the Veteran has not asserted that his Non-Hodgkin’s lymphoma is the result of any disease or injury in service, other than his asserted herbicide exposure in Guam. Therefore, there is no probative medical or lay evidence to support a nexus between service and the Veteran’s Non-Hodgkin’s lymphoma. 

Based on the evidence presented above, the Board herein finds that severance of service connection for Non-Hodgkin’s lymphoma, effective August 1, 2018 was appropriate. The evidence fails to show that the Veteran was entitled to service connection for Non-Hodgkin’s lymphoma due to exposure to herbicides at the time of the June 2017 rating decision, nor since then. Thus, the grant of service connection in June 2017 for Non-Hodgkin’s lymphoma as due to herbicide agent exposure in Guam was clearly and unmistakably erroneous. The severance is proper, and restoration is denied.

 

D. Martz Ames

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD N. Stevens, Associate Counsel