﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/21 Archive Date: 03/31/21

DOCKET NO. 200330-86041
DATE: March 31, 2021

ORDER

Severance being proper, restoration of service connection for the Veteran’s corneal scar of the left eye associated with herpetic keratosis of the left eye, healed; effective October 1, 2018; is denied.

Entitlement to a disability rating in excess of 50 percent prior to September 28, 2018 for posttraumatic stress disorder (PTSD) with alcohol disorder; is denied.

Entitlement to a disability rating of 70 percent from September 28, 2018 through October 28, 2020 for PTSD with alcohol disorder; is granted.

Entitlement to a disability rating in excess of 70 percent from September 28, 2018 for PTSD with alcohol disorder; is denied.

REMANDED

Entitlement to a compensable disability rating for herpetic keratosis of the left eye, healed; with corneal scar of the left eye; is remanded.

Entitlement to total disability rating based on individual unemployability (TDIU) is remanded.

FINDINGS OF FACT

1. The Veteran’s corneal scar of the left eye is not a visible skin condition but rather an eye disease.

2. Prior to September 28, 2018; the severity, frequency, and duration of the Veteran’s PTSD symptoms did not more closely approximate occupational and social impairment with deficiencies in most areas.

3. From September 28, 2018; the severity, frequency, and duration of the Veteran’s PTSD symptoms did more closely approximate occupational and social impairment with deficiencies in most areas.

4. From September 28, 2018; the severity, frequency, and duration of the Veteran’s PTSD symptoms did not more closely approximate total occupational and social impairment.

CONCLUSIONS OF LAW

1. The severance of service connection for the Veteran’s corneal scar of the left eye was proper. 38 U.S.C. § 5112; 38 C.F.R. § 3.105.

2. The criteria for a disability rating in excess of 50 percent for PTSD prior to September 28, 2018; have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411.

3. The criteria for a disability rating of 70 percent for PTSD from September 28, 2018 through October 28, 2020; have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411.

4. The criteria for a disability rating in excess of 70 percent for PTSD from September 28, 2018; have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Marine Corps from October 1965 until his honorable discharge in October 1969.

These matters come before the Board of Veterans’ Appeals (Board) on appeal from a July 2018 rating decision (August 1, 2018 notification) by the Regional Office (RO) of the United States Department of Veterans Affairs (VA).

As a preliminary matter, the Board notes that the Veteran perfected his appeal from the March 2020 Statement of the Case by filing a Decision Review Request: Board Appeal (Notice of Disagreement) (VA Form 10182) on March 30, 2020; opting into the Appeals Modernization Act (AMA). Within the March 30, 2020 VA Form 10182, the Veteran elected to have a hearing before a Veterans Law Judge and appealed the issues of the disability rating for PTSD, the disability for herpes scar on the center of the eye, Reverse of CUE for Eye [presumably the severance of service connection], and entitlement to TDIU.

In May 2020, the Veteran filed a subsequent VA Form 10182 electing a Direct Review by a Veterans Law Judge, effectively withdrawing his request for a hearing for the same issues on appeal from the March 2020 Statement of the Case. The Veteran was notified in the July 2020 correspondence that the appeal was changed from the hearing request docket to the direct review docket. See July 22, 2020 correspondence.

The following day, May 7, 2020, VA received an Appeal to Board of Veterans’ Appeals (VA Form 9) dated March 29, 2020; appealing the March 2020 Statement of the Case, electing not to have an optional Board hearing and providing arguments for his appeals. Because the Veteran already opted into the AMA by previously filing a VA Form 10182 in March 2020, the Veteran no longer has an option to appeal under the Legacy system. However, the Board shall consider the arguments submitted within the May 2020 VA Form 9.

Severance

Service connection will be severed only where evidence establishes that it is clearly and unmistakably erroneous (CUE) (the burden of proof being on the Government). 38 C.F.R. § 3.105(d).

When severance of service connection is considered warranted, a rating proposing severance will be prepared setting forth all material facts and reasons. The claimant will be notified at his or her last address of record of the contemplated action and furnished detailed reason(s) therefor and will be given 60 days for the presentation of additional evidence to show that service connection should be maintained. Unless otherwise provided in paragraph (i) of this section, if additional evidence is not received within that period, final rating action will be taken and the award will be reduced or discontinued, if in order, effective the last day of the month in which a 60-day period from the date of notice to the beneficiary of the final rating expires. 38 C.F.R. § 3.105(d).

A change in diagnosis may be accepted as a basis for severance action if the examining physician or physicians or other proper medical authority certifies that, in the light of all accumulated evidence, the diagnosis on which service connection was predicated is clearly erroneous. This certification must be accompanied by a summary of the facts, findings, and reasons supporting the conclusion. 38 C.F.R. § 3.105(d).

To establish that a grant of service connection was the product of CUE, VA must show that (1) either the correct facts as they were known at the time were not before the adjudicator, the adjudicator made an erroneous factual finding, or the statutory or regulatory provisions were incorrectly applied; (2) the alleged error was undebatable, not merely a disagreement as to how the facts were weighed or evaluated; and (3) the error manifestly changed the outcome of the prior decision. See Allen v. Nicholson, 21 Vet. App. 54, 58-59 (2007); Stallworth v. Nicholson, 20 Vet. App. 482, 487-88 (2006); cf. Bustos v. West, 179 F.3d 1378, 1380-81 (Fed. Cir. 1999); Damrel v. Brown, 6 Vet. App. 242, 245 (1994); Russell v. Principi, 3 Vet. App. 310, 313-14, 319 (1992) (en banc). A clear and unmistakable error is one about which reasonable minds could not differ. See, e.g. 38 C.F.R. § 20.1403(a).

The same standards apply in a determination of clear and unmistakable error for the purpose of severing service connection; however, for the latter case the reviewable evidence is not limited to that which was before the RO at the time of the challenged rating decision. Daniels v. Gober, 10 Vet. App, 474, 480 (1997); Allen v. Nicholson, 21 Vet. App. 54, 59 (2007). The severance decision focuses not on whether the original decision was clearly erroneous but on whether the current evidence establishes that service connection is clearly erroneous. Stallworth v. Nicholson, 20 Vet. App. 482 (2006).

In most respects, the CUE standard for severing service connection under 38 C.F.R. § 3.105(d) is equivalent to the CUE standard for reversing or revising a prior final decision under 38 C.F.R. § 3.105(a). See Baughman v. Derwinski, 1 Vet. App. 563, 566 (1991). 38 C.F.R. § 3.105(d) places at least as high a burden of proof on the VA when it seeks to sever service connection as 38 C.F.R. § 3.105(a) places upon the appellant seeking to have an unfavorable previous determination overturned.

However, the determination is not limited to the law and the record that existed at the time of the original decision. VA may consider medical evidence and diagnoses that postdate the original award of service connection to demonstrate that the diagnosis on which service connection was predicated is clearly erroneous. Stallworth, 20 Vet. App. at 488. The Secretary’s burden is not to prove clear and unmistakable error in the original decision in the same manner a claimant would show CUE under sections 5109A or 7111.

Additionally, disabilities, including those arising from a single disease entity, are generally rated separately before ratings are then combined in accordance with 38 C.F.R. § 4.25. However, VA is prohibited from pyramiding (rating the same disability, or the same manifestation of a disability, under different diagnostic codes). 38 C.F.R. § 4.14. When disabilities have duplicative or overlapping symptoms, the rule against pyramiding prohibits VA from compensating the Veteran more than once for the same symptom or impairment. Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994); Lyles v. Shulkin, 29 Vet. App. 107 (2017).

1. The severance of the Veteran's corneal scar of the left eye associated with herpetic keratosis of the left eye, healed, effective October 1, 2018

The initial question for the Board is whether the RO followed the due process requirements of 38 C.F.R. § 3.105(d) for severing service connection. The RO originally granted service connection for the Veteran’s corneal scar of the left eye, effective February 25, 2014 in the August 13, 2014 rating decision.

In the July 8, 2015 rating decision, the RO proposed to sever service connection for the Veteran’s corneal scar of the left eye. The RO explained that the decision to grant service connection for the aforementioned disability was clearly and unmistakably erroneous because it used the criteria for rating a skin disability for a visible scar to evaluate the Veteran’s eye disorder where the 1 millimeter scar was not a disability of the head, face, and neck; and would not cause disfigurement or asymmetry of the eyes’ appearance and should be rated with the already service connected herpetic keratosis of the left eye.

In the July 26, 2018 rating decision, the RO severed service connection for the Veteran’s corneal scar of the left eye; effective October 1, 2018.

Based on the above sequence of events, the Board finds that the RO followed the proper due process steps for severing service connection.

First, the RO issued the proposed severance in July 2015, and the Veteran was notified at his latest address of record of this contemplated action and furnished detailed reasons therefor and was given 60 days for the presentation of additional evidence to show that service connection should be maintained. The notice letter also informed the Veteran that he had the opportunity of a hearing if such a request for a hearing was received by VA within 30 days from the date of notice. See 38 C.F.R. § 3.105(i).

The RO issued the July 2018 rating decision, which severed service connection prospectively effective October 1, 2018. Notice of this rating decision, plus his appeal rights, was sent to the Veteran on August 1, 2018. The October 1, 2018 date was greater than the last day of the month in which a 60-day period from the August 1, 2018 notice expired. Thus, the Board finds that all due process requirements were met in the severance of service connection for the Veteran’s corneal scar of the left eye. See 38 C.F.R. § 3.105(d).

Having met the due process requirements, the remaining question before the Board in this case is whether the severance of service connection for the Veteran’s corneal scar of the left eye was clearly and unmistakably erroneous. The Board concludes that the severance of service connection was proper because the RO was able to show that (1) the adjudicator made an erroneous factual finding, and the statutory or regulatory provisions were incorrectly applied; (2) the alleged error was undebatable, not merely a disagreement as to how the facts were weighed or evaluated; and (3) the error manifestly changed the outcome of the prior decision.

In the present case, the Veteran’s corneal scar of the left eye was granted in error in the August 13, 2014 rating decision as a visible scar of the head, face, and neck. The Veteran’s corneal scar of the left eye measures 1 millimeter in diameter and the April 2015 VA examiner noted that a scar this small cannot be seen with the naked eye. Therefore, the Board finds that the grant of service connection for corneal scar of the left eye associated with herpetic keratosis of the left eye, healed; was granted in CUE; and the Veteran’s corneal scar of the left eye is a disease of the eye rather than a visible scar of the head, face, and neck.

The Board notes that the Veteran has been service-connected for herpetic keratosis of the left eye, healed under Diagnostic Code 6001 for the entire period on appeal. However, as noted above, VA is prohibited from pyramiding (rating the same disability, or the same manifestation of a disability, under different diagnostic codes). 38 C.F.R. § 4.14. Therefore, the Board finds that the Veteran’s herpetic keratosis of the left eye, healed is now herpetic keratosis of the left eye, healed; with corneal scar of the left eye.

Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the specific basis for the evaluation assigned; the additional code is shown as a hyphen. 38 C.F.R. § 4.27. The Board has considered adjusting the Veteran’s Diagnostic Code for herpetic keratosis of the left eye, healed. However, the Board finds that simply changing the listed disability of “herpetic keratosis of the left eye, healed” to “herpetic keratosis of the left eye, healed; with corneal scar of the left eye” properly identifies the basis for evaluation and any relevant Diagnostic Code that would be utilized would result in the same evaluation under 38 C.F.R. § 4.79 Diseases of the Eye.

Increased Rating

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Schedule), found in 38 C.F.R. Part 4. The Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran’s favor. 38 C.F.R. § 4.3.

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of any disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the Veteran’s medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999).

Where entitlement to compensation has been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Where an appeal is based on an initial rating for a disability, however, evidence contemporaneous with the claim and the initial rating decision are most probative of the degree of disability existing when the initial rating was assigned and should be the evidence “used to decide whether an original rating on appeal was erroneous.” Fenderson v. West, 12 Vet. App. 119, 126 (1999). In either case, if later evidence indicates that the degree of disability increased or decreased following the assignment of the initial rating, staged ratings may be assigned for separate periods of time. Fenderson, 12 Vet. App. at 126; Hart v. Mansfield, 21 Vet. App. 505 (2007) (noting that staged ratings are appropriate whenever the factual findings show distinct time periods in which a disability exhibits symptoms that warrant different ratings). When adjudicating an increased rating claim, the relevant time period for consideration is the time period one year before the claim was filed. Hart, 21 Vet. App. at 509.

2. Entitlement to a disability rating in excess of 50 percent prior to September 28, 2018 for PTSD with Alcohol Disorder

3. Entitlement to a disability rating in excess of 50 percent from September 28, 2018 to October 28, 2020 for PTSD with Alcohol Disorder

4. Entitlement to a disability rating in excess of 70 percent from October 29, 2020 for PTSD with Alcohol Disorder

The Veteran asserts that he is entitled to a disability rating in excess of 50 percent prior to October 29, 2020 and in excess of 70 percent from October 29, 2020.

Under the General Formula for Mental Disorders (General Formula), the Board must conduct a “holistic analysis” that considers all associated symptoms, regardless of whether they are listed as criteria. Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017); 38 C.F.R. § 4.130. The Board must determine whether unlisted symptoms are similar in severity, frequency, and duration to the listed symptoms associated with specific disability percentages. Then, the Board must determine whether the associated symptoms, both listed and unlisted, caused the level of impairment required for a higher disability rating. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 114-118 (Fed. Cir. 2013). 

The issue in this appeal is whether the Veteran’s associated symptoms caused the level of impairment required for a disability rating of 70 percent or higher prior to October 29, 2020 and a level of impairment required for a disability rating of 100 percent from October 29, 2020.

The Board concludes that prior to September 28, 2018, the Veteran’s symptoms did not cause the level of impairment required for a disability rating of 70 percent or higher. The Veteran’s symptoms more closely approximated the symptoms associated with a 50 percent disability rating, and resulted in a level of impairment that most closely approximated the level of impairment associated with a 50 percent rating.

The Board also concludes that from September 28, 2018, the Veteran’s symptoms caused the level of impairment required for a disability rating of 70 percent (resulting in a grant of an increased rating for the period of September 28, 2018 to October 28, 2020) and did not cause the level of impairment required for a disability rating of 100 percent. The Veteran’s symptoms more closely approximate the symptoms associated with a 70 percent disability rating and resulted in a level of impairment that most closely approximated the level of impairment associated with a 70 percent disability rating.

A noncompensable rating is assigned when a mental condition has been formally diagnosed, but symptoms are not severe enough to either require continuous medication, or to interfere with occupational and social functioning.

A 10 percent rating is assigned when mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of occasional stress, or symptoms controlled by medication cause occupational and social impairment.

A 30 percent rating is assigned when symptoms such as depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, or recent events), cause occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and normal conversation).

A 50 percent rating is assigned when symptoms such as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships cause occupational and social impairment with reduced reliability and productivity.

A 70 percent rating is assigned when symptoms such as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or inability to establish and maintain effective relationships cause occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood.

A 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation or own name.

Prior to September 28, 2018

VA treatment records, the July 2017 and February 2018 VA examination, and the Veteran’s lay statements show that the Veteran’s PTSD was manifested by symptoms associated with a 30 percent disability rating (depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, or recent events); symptoms associated with a 50 percent disability rating ([flattened affect; difficulty in understanding complex commands; impaired judgment; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships), and symptoms associated with a 70 percent disability rating (difficulty in adapting to stressful circumstances (including work or a worklike setting)).

The Board also finds the level of impairment caused by the Veteran’s symptoms more closely approximates the level associated with a 50 percent rating. The Veteran experienced occupational and social impairment with reduced reliability and productivity. Mental status examinations in VA treatment records and the July 2017 and February 2018 VA examinations indicate that the Veteran had occupational and social impairment with reduced reliability and productivity. During the July 2017 and February 2018 VA examination, the Veteran reported that conflicts with his wife but has a good relationship with his children. 

While the Veteran did experience a single symptom contemplated by a 70 percent disability rating (difficulty in adapting to stressful circumstances (including work or a worklike setting)) prior to September 28, 2018; the evidence overall does not demonstrate the level of impairment associated with a 70 percent disability rating. As noted above, the Veteran’s other remaining symptoms were either contemplated by or more consistent with a 50 percent disability rating or lower. Further, while the Veteran ceased working, he reported that it was due to other non-psychiatric disabilities. The Board notes that the Veteran did report anger issues that likely would affect his ability to work collaboratively with peers, supervisors, and respond appropriately with the public in a reasonable manner but does not negate his ability to work.

From September 28, 2018

VA treatment records, the September 2018 (signed and uploaded on October 2, 2018) and November 2020 VA examinations, and the Veteran’s lay statements show that the Veteran’s PTSD was manifested by symptoms associated with a 30 percent disability rating (depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, or recent events)); symptoms associated with a 50 percent disability rating ([flattened affect; circumstantial, circumlocutory, or stereotyped speech; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships]), and symptoms associated with a 70 percent rating ([suicidal ideation; impaired impulse control (such as unprovoked irritability with periods of violence); difficulty in adapting to stressful circumstances (including work or a worklike setting); and inability to establish and maintain effective relationships). The Board notes that although the narrative of behavioral observations of the November 2020 VA examination, the VA examiner indicated under the symptoms section that the Veteran did have suicidal ideation and explained that the Veteran does have passive suicidal ideation.

The Board notes that the Veteran expressed suicidal ideation, which is similar to persistent danger of self-harm, which is contemplated by the 100 percent criteria. Bankhead v. Shulkin, 29 Vet. App. 10, 19 (2017). However, the severity, frequency, and duration of the Veteran’s suicidal ideation has not risen to the level contemplated by the 100 percent disability rating. The Veteran regularly denied thoughts, intent, or a plan involving self-harm in existing treatment records, and during the VA examinations.

The Board also finds the level of impairment caused by the Veteran’s symptoms more closely approximates the level associated with a 70 percent rating. The Veteran experienced occupational and social impairment with reduced reliability and productivity with deficiencies in most areas.

While the Veteran did experience symptoms contemplated by a 100 percent disability rating (suicidal ideation, also contemplated by a 70 percent disability rating); the evidence overall does not demonstrate the level of impairment associated with a 100 percent rating. Specifically, the evidence does not demonstrate that the level of impairment rises to total occupational and social impairment. As noted above, the Veteran’s other remaining symptoms were either contemplated by or more consistent with a 70 percent rating.

The Board notes that the RO granted the Veteran’s claim for an increased disability rating to 70 percent effective October 29, 2020; the date the application for TDIU was received. However, because the Veteran’s claim for an increased disability rating for his service-connected PTSD was already on appeal; and the September 28, 2018 VA examination showed increase in the severity of the Veteran’s disability (after the claim was filed); the date that the increase is shown to have occurred (date entitlement arose) is the appropriate effective date. 38 C.F.R. § 3.400 (o)(1). Therefore, the Veteran’s claim for an increased disability rating to 70 percent from September 28, 2018 is granted. However, in short, the preponderance of the evidence weighs against finding that the severity, frequency, and duration of the Veteran’s symptoms resulted in the level of impairment required for a 100 percent rating. The criteria for a 100 percent disability rating are not met and the appeal must be denied.

In short, the preponderance of the evidence weighs against finding that the severity, frequency, and duration of the Veteran’s symptoms resulted in the level of impairment required for a 100 percent rating. The criteria for a 100 percent or higher rating are not met and the appeal must be denied.

REASONS FOR REMAND

5. Entitlement to a compensable disability rating for herpetic keratosis of the left eye, healed; with corneal scar of the left eye; is remanded.

Where VA provides the veteran with an examination in a service connection claim, the examination must be adequate. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007).

The Board notes that the Veteran is diagnosed with bilateral cataracts due to senescence (deterioration with age) that is not related to his service-connected disabilities. However, the VA examiners have not provided a detailed analysis of what portion of the Veteran’s defects of visual acuity and visual fields are related to his service-connected herpetic keratosis of the left eye, healed; with corneal scar of the left eye; and what portion of the Veteran’s defects of visual acuity and visual fields are related to his bilateral cataracts.

Furthermore, the VA examiner has not opined if the Veteran’s cataracts are aggravated beyond their natural progression by a service connected disability.

6. Entitlement to TDIU is remanded.

Finally, because a decision on the remanded issue of entitlement to a compensable disability rating for herpetic keratosis of the left eye, healed; with corneal scar of the left eye could significantly impact a decision on the issue of entitlement to TDIU, the issues are inextricably intertwined. A remand of the claim for entitlement to TDIU is required.

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for an examination by an appropriate clinician to determine the current severity of his service-connected herpetic keratosis of the left eye, healed; with corneal scar of the left eye. The examiner should provide a full description of the disability and report all signs and symptoms necessary for evaluating the Veteran’s disability under the rating criteria.

The examiner must provide a detailed explanation and rationale for the following questions:

(a) Are the Veteran’s bilateral cataracts aggravated beyond their natural progression by any of the Veteran’s service-connected disabilities (including treatment of the disabilities)?

(b) What portion of the Veteran’s defects of visual acuity and visual fields are related to his service-connected herpetic keratosis of the left eye, healed; with corneal scar of the left eye; and what portion of the Veteran’s defects of visual acuity and visual fields are related to his bilateral cataracts. If a detailed analysis nor an estimate can be provided, it must be stated.

(c) If possible, please provide a similar analysis for the prior VA examinations during the period on appeal.

2. After the above development, and any additionally indicated development, has been completed, readjudicate the issues on appeal, including the inextricably intertwined issue of entitlement to TDIU. If the benefit sought is not granted to the Veteran’s satisfaction, send the Veteran and his representative a Supplemental Statement of the Case and provide an opportunity to respond. If necessary, return the case to the Board for further appellate review.

 

 

M. Tenner

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board G. Deemer, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.